This cause comes here on appeal from the district court of Logan county, Okla., and involves three actions commenced in that court; one being an original appeal by the Bank Commissioner from the board of county commissioners of Logan county, Okla., to the district court of that county, claiming that the equalization of the taxes hereinafter mentioned was not fairly and justly made in accordance with the values fixed on other similar real property in Logan county for the years mentioned. Another is an appeal by the county attorney from the order of the board of county commissioners in attempting to adjust and equalize the taxes on the real property hereinafter mentioned. The third is an injunction suit enjoining the county treasurer of Logan county, Okla., from selling the real property hereinafter mentioned at resale tax sale.
These three cases were consolidated by agreement of the parties and tried before the district court of Logan county without a jury. The stipulation relative to the consolidation and trial is as follows:
"Whereas, on the 14th day of April, 1928, the state of Oklahoma on the relation of C.G. Shull. Bank Commissioner of the state of Oklahoma, filed a transcript and appeal from the board of county commissioners of Logan county, state of Oklahoma, in cause No. 5944;
"Whereas, on the 21st day of April, 1928, George W. Partridge, as county attorney of Logan county, state of Oklahoma, gave notice of appeal and caused to be filed in the office of the court clerk, in cause No. 5948, a transcript of appeal from the order of the board of county commissioners of Logan county, Okla.; and
"Whereas, in cause No. 5943, the State of Oklahoma ex rel. C.G. Shull, Bank Commissioner of the State of Oklahoma, Plaintiff v. Fred L. Wenner, County Treasurer of Logan County, State of Oklahoma, a petition was filed and an injunction granted on the 13th day of April, 1928; and
"Whereas, said matters are now pending in the district court of Logan county, state of Oklahoma, and it is the desire of the parties therein and their attorneys of record to settle and dispose of said litigation as expeditiously as possible, and without unnecessary delay —
"Now, therefore, it is stipulated and agreed by and between the state of Oklahoma ex rel. C.G. Shull, Bank Commissioner of the state of Oklahoma, by Fred W. Green, its attorney, and Fred L. Wenner, county treasurer of Logan county, state of Oklahoma, and the said George W. Partridge, representing the state of Oklahoma as such county attorney, and the board of county commissioners of Logan county, Okla., that the following constitutes the facts and history of the matter in controversy, and that they are substantially as follows, to wit:
"That C.G. Shull is the duly appointed, qualified, and acting Bank Commissioner of the state of Oklahoma, and as such is in charge of the assets of the guaranty fund of the state of Oklahoma. That the property in question, to wit, lots 13 and 24, inclusive, in block 63, Guthrie Proper, and lot 13, block 64, Guthrie Proper, and lots 6 to 19, inclusive, in block 66, and all that part of Sixth street in Guthrie lying west of and contiguous to said block 66, all in that part of the city of Guthrie known as Guthrie Proper, according to the recorded plat thereof, is held, owned, and controlled by the plaintiff, as such Bank Commissioner, and that the same is a part of the assets of the bank guaranty fund of the state of Oklahoma, by reason of the failure of the Oklahoma State Bank of Guthrie in October, 1921, among the assets of which failed bank were certain notes secured by a mortgage upon said mill property.
"The Bank Commissioner of the state of Oklahoma foreclosed said mortgage and obtained a sheriff's deed in the said foreclosure proceedings in the district court of Logan county, state of Oklahoma, in July, 1922, and has ever since been in possession and charge of said property.
"That the Bank Commissioner, through Charles S. Olson, liquidating agent, paid the *Page 295 
taxes in the sum of $3,349.50, being all of the 1921 taxes on October 30, 1922, receipt No. 13404, and the basis of the assessment for the year 1921 being $60,020. That said assessment had been made prior thereto by the officers of the Gresham Flour Mills Corporation, which owned said property at the time of said assessment, and succeeded to the interest of the Guthrie Mill Elevator Company.
"That the Bank Commissioner of the state of Oklahoma did not at any time during 1922 to 1927, inclusive, or at any other time, make any return or listing of said property for assessment to the county assessor of Logan county, Okla. That the Bank Commissioner did not list said property for assessment for taxes or attend the meetings, or any of them, of the county board of equalization for any of said years, for the purpose of correcting the assessment of said property for taxation, for the reason that the state of Oklahoma, on the relation of the Bank Commissioner, at the time was claiming that said property in the hands of the Bank Commissioner of the state of Oklahoma, being a part of the assets of the guaranty fund, was not subject to taxation.
"The county assessor of Logan county continued to assess said property and to place the same upon the tax rolls of Logan county, Okla., for taxing purposes for the years 1922, 1923, 1924, 1925, 1926, and 1927, at the same valuation of $60,020. That, as a part of said assessment, the property of the Fairbanks Company was included in said assessment. That, prior to the foreclosure sale of said property, the said Guthrie Mill Elevator Company had an interest in certain machinery and power plant constituting part of said mill property purchased from said Fairbanks Company under executory installment contract with retention of title in the Fairbanks Company until fully paid for, and that up to said foreclosure said Guthrie Mill Elevator Company was in possession of said property, using it as part of its plant, and that it was until that time rendered for taxation by said Guthrie Mill Elevator Company as if the unincumbered owner thereof as a part of said real estate assessment of $60,020. That the original contract price between the Guthrie Mill Elevator Company and Fairbanks Company for said power plant and machinery was approximately $45,000, and that at the time of the foreclosure suit in the district court of Logan county, state of Oklahoma, there was a balance due to the Fairbanks Company of approximately $31,000 on said property on said power plant and machinery. That on or about the 6th day of March, 1926, O.R. McComb, tax ferret for Logan county, George W. Partridge, as county attorney, and Fred L. Wenner, as county treasurer, stipulated and agreed with Fred W. Green and Rainey, Flynn Green, attorneys for the Fairbanks Company, that said property should be listed separately in order that the same might be removed from said premises, and that said property was listed separately in said tax ferret proceeding at a valuation of $5,000 for the years 1924, 1925, and 1926, and that thereupon the Fairbanks Company paid the county treasurer upon a certificate of assessment the sum of $893.85. That said power plant and machinery was sold at said time for the sum of $9,000, and that said listing upon a basis of $5,000 was stipulated as a reasonable valuation for taxing purposes; and said power plant and machinery was thereupon removed from said property.
"The Bank Commissioner of the state of Oklahoma contracted to sell said real estate above described, in January, 1926, to the Logan County Mill Grain Company for $15,000, which contract was approved by the district court of Logan county, state of Oklahoma, as required by law, and that extension of said contract has been made to January, 1929. Copies of said contracts and orders being marked exhibits 'E', 'F', 'G', 'H' and 'I', attached hereto and made a part hereof.
"That on or about the 5th day of March, 1928, the Bank Commissioner of the state of Oklahoma filed his petition for correction of errors and erroneous assessment for taxation with the board of county commissioners of Logan county, Okla. That a copy of said petition is hereto attached, marked exhibit 'A' and made a part hereof, the same as if fully set forth.
"That thereafter, and on the 28th day of March, 1928, the board of county commissioners took certain proceedings wherein they made findings of facts and conclusions of law; a copy of said findings of facts and conclusions of law is hereto attached, marked exhibit 'B' and made a part hereof the same as if fully set forth. That, thereafter, an appeal was taken from said order, findings of facts, and conclusions of law by the state of Oklahoma on the relation of the Bank Commissioner to the district court of Logan county, state of Oklahoma (5933), and that on the 30th day of March, 1928, the district court of Logan county, state of Oklahoma, made and entered its order reversing and remanding said order and judgment of the board of county commissioners; a copy of which said judgment and order is hereto attached, marked exhibit 'C', and made a part hereof the same as if fully set forth. And that no motion for new trial has been filed by the state of Oklahoma by George W. Partridge, county attorney, and that no appeal has been taken from said judgment of March 30, 1928.
"That thereafter, on the 3rd day of April, 1928, said matter came on for hearing before the board of county commissioners, and said board of county commissioners made and entered its order fixing the valuation of said *Page 296 
property upon a basis of $15,000, and directing the county clerk of Logan county, state of Oklahoma, to issue a certificate of error to the county treasurer of Logan county, state of Oklahoma, stating the amount of such correction accordingly, and that a copy of said order, findings, and proceedings of the board of county commissioners is hereto attached, marked exhibit 'D', and made a part hereof.
"That said order has been appealed from by both the state of Oklahoma, on the relation of C.G. Shull, Bank Commissioner of the state of Oklahoma, and the state of Oklahoma, acting by and through George W. Partridge, county attorney of Logan county, state of Oklahoma, and is the appeal and order set out and complained of by both parties in said causes Nos. 5944 and 5948, respectively.
"It is further stipulated and agreed that said causes Nos. 5944 and 5948 shall be consolidated with and in cause No. 5943; that all further decrees, orders, and judgments shall be entered in No. 5943, and that any of the parties hereto as herein provided shall have the right to appeal therefrom, in cause No. 5943, as consolidated with said other causes.
"That evidence shall be taken by either of said parties hereto as to the assessed valuation of said real estate as compared to the assessed valuation of other property in Logan county, assessed upon an ad valorem basis for said years; and that the district court shall make its findings of fact or facts thereon, and that said cause shall be submitted upon this stipulation and the evidence so taken before the district court, and final order and decree entered thereon, and that the same shall constitute a complete transcript of record in said cause, and that either party hereto, shall have the right to appeal therefrom as provided by law. But nothing herein contained shall be construed as a waiver of any objections to jurisdiction, or, as to, the rights of the state of Oklahoma, as represented by the county attorney herein, under any or all of the three motions filed in this cause on the 2nd day of May, 1928, involving the question of the jurisdiction of this court, upon certain aspects thereof.
"And the matters and things involved in this cause requiring rulings of the court shall be ruled on and adjudicated separately according to the right thereof, as if said causes had not been consolidated, although for convenience and economy they are all done in the consolidated cause under one docket number.
"It is further stipulated and agreed that the parties hereto shall be: First, the state of Oklahoma, on the relation of C.G. Shull, Bank Commissioner of the state of Oklahoma; and that the other parties shall be grouped as the state of Oklahoma by George W. Partridge, county attorney, Fred L. Wenner, county treasurer, and the board of county commissioners of Logan county, state of Oklahoma; but the state of Oklahoma, as represented herein by the county attorney, shall not be deemed to admit that the board of county commissioners of hereto, county, Okla., is a necessary party hereto, whether said term be interpreted as the members of said board collectively or as the the statutory corporate name of Logan county.
"It is further stipulated and agreed that in the event an appeal is taken from the findings of fact, conclusions of law, judgment or order of the district court of Logan county, state of Oklahoma, to the Supreme Court of the state of Oklahoma, that all parties agree to press said appeal promptly and vigorously and both parties agree to join in an application to advance said cause in the Supreme Court of the state of Oklahoma."
At page 127 (C.-M.) it was further stipulated that:
"For the purpose of economy in the expense of producing and examining witnesses, and without prejudice to the objections to jurisdiction urged by defendants or any of them, and without prejudice to the general objection to the introduction of any evidence whatever, it is further stipulated under this section of the general stipulation in this case that during the years 1922 to 1927, inclusive, property, particularly real estate in Logan county, was assessed and placed on the tax roll by the county assessor in the city of Guthrie in said county at approximately 66 2/3 per cent. of its fair, reasonable market or selling value, and that property, and particularly the real estate consisting of farms and other real estate outside of the city of Guthrie, in said county, was by the county assessor assessed and placed on the tax roll at approximately 50 per cent. of its fair market or selling value; that the intention of said assessor was to fix the general scale of valuation herein mentioned for equalization with other counties making a like practice, and was without any intentional or systematic discrimination against any property or class of property, and was without the intent to discriminate against the property involved in this cause, and was with the intent to assess said property involved herein at the same percentage to real value at which other properties are assessed, whether that intent was actually carried out successfully or not. This stipulation is made and may be offered and submitted in proof on the trial of said cause subject only to relevancy, materiality, and for competency."
At page 129 (C.-M.) it was further stipulated:
"It is hereby stipulated and agreed that *Page 297 
if any evidence is taken under section 13 of the main stipulation of facts, etc., on the hearing of this case, that the state of Oklahoma, on the relation of C.G. Shull, Bank Commissioner, may offer and submit as part of his proof, subject only to objections to relevancy and materiality, the originals of the attached copies of letters of T.C. Thatcher to Hon. C.G. Shull, Bank Commissioner, of date March 3, 1928, and the letter of G.G. Sohlberg to Hon. C.G. Shull, Bank Commissioner, of date March 5, 1928, and the letter of the El Reno Mill Elevator Company by K.E. Humphrey, president and general manager, to Hon. C.G. Shull, Bank Commissioner, of date March 3, 1928, copies of each of which letters are attached hereto, and said letters shall be considered in all respects as the depositions of said witnesses, duly and legally taken, and filed in said cause."
These letters fix the value on the property from $10,000 to $20,000. All exhibits attached to the stipulations were offered in evidence upon the trial.
At the trial before the board of county commissioners, after hearing the evidence, they found and ordered that the property in question should be assessed for taxation at the total assessed valuation of $15,000 for each of the years from 1922 to 1927, each inclusive. In January, 1926, the Bank Commissioner contracted to sell the property for the sum of $15,000, which contract was approved by the district court of Logan county, Okla. Upon the trial of the cause in the district court, the letters mentioned in the stipulation were offered in evidence.
After hearing the evidence the district court found that the property should have been assessed at a valuation of $9,000 from 1922 to 1927, each inclusive, the same being the valuation at which other similar real property in Logan county was assessed during said years for ad valorem taxes. The district court denied the appeal of the county attorney from the order of the board of county commissioners and made the injunction against the resale under the former assessments permanent. The plaintiff in error excepted to each separate ruling, order, and judgment of the trial court.
The plaintiff in error filed a motion for new trial in each of said actions and gave notice of appeal, and brings the cases here to review the three several judgments of the district court of Logan county, Okla.
There does not seem to be any material dispute in regard to the value of the property during the years mentioned; the only issue presented is, Did the board of county commissioners have the right and authority under the statutes of this state to determine whether there had been an erroneous assessment, and to correct the same? If so, the matters before the board of county commissioners were duly appealed to the district court and passed on by the court without a jury, and the findings of the court seemed to be reasonably sustained by the evidence. On the other hand, if the contention of the plaintiff in error is correct, that the board of county commissioners of Logan county, state of Oklahoma, is without authority to correct the erroneous assessment, then the district court of Logan county would have no authority to hear and determine the question of whether or not there was an erroneous assessment upon appeal from said board.
Defendant in error contends that the board of county commissioners had authority to correct the erroneous assessment under the authority granted by sections 9673 and 9674, C. O. S. 1921. The plaintiff in error contends that section 9673 was declared unconstitutional by the Supreme Court of this state prior to the time that it was brought forward in Compiled Statutes of 1921, and that it cannot be given any vitality by being placed in the Compiled Laws of 1921 by the codifiers. The plaintiff in error also contends that section 9674, C. O. S. 1921, does not vest in the board of county commissioners authority to correct errors in the assessments mentioned, and in support of that contention cites Hays v. Bonaparte,129 Okla. 258, 264 P. 605.
We fully agree with the contention of the plaintiff in error relative to section 9673, C. O. S. 1921. This court in Johnson v. Grady County, 50 Okla. 188, 150 P. 497, held that the last clause in section 14, chapter 152, Session Laws of 1910-11, was unconstitutional; and in Carroll, Brough Robinson v. Board of County Commissioners of Oklahoma County, 64 Okla. 165,166 P. 702, this court held that section 14, chapter 152, Session Laws of 1910-11, is unconstitutional and void, and that the board of county commissioners of Oklahoma county was without jurisdiction to grant a rebate of taxes because of an alleged excessive assessment upon the property. So, this section having been declared unconstitutional prior to the time that it was brought forward as section 9673 in the Compiled Oklahoma Statutes of 1921, it has no force and effect as a law, since it was declared unconstitutional.
However, after the constitutionality of *Page 298 
this act was challenged in 1915,the Legislature in 1916 passed what is now section 9674, C. O. S. 1921, with the emergency clause attached. This section authorizes the board of county commissioners of each county to hear and determine allegations of erroneous assessments, mistakes, or errors made in assessing or preparing the tax rolls, or in the description of land or other property, before the taxes have been paid, on application of any person or persons who shall show by affidavit good cause for not having attended the meeting of the county board of equalization for the purpose of correcting such error, mistake, or difference.
Counsel for plaintiff in error contends that this court in Hays v. Bonaparte, 129 Okla. 258, 264 P. 605, held that section did not give the board of county commissioners authority to correct an erroneous assessment of taxes.
We cannot agree with counsel that Hays v. Bonaparte, supra, sustains his contention. In that case this court held that where property has been voluntarily listed for taxation by the owner and valuation placed thereon by him is increased by the assessor or by the board of equalization without timely notice to him or without his knowledge or consent, and he is thereby deprived of his right of appeal, his remedy is to pay the taxes under protest and proceed in accordance with the provisions of section 9971, C. O. S. 1921. Mr. Justice Hefner, in delivering the opinion of the court, after discussing sections 9674 and 9648, says:
"These two sections give the county commissioners jurisdiction in at least three classes of cases in which the board is authorized to issue certificates of error in assessment."
Later, in the case of Cotton v. Blake, County Treasurer,133 Okla. 60, 2170 P. 1105, this court held that:
"When the statutes provide a remedy against an excessive, erroneous, or improper assessment of the property of an individual, as by section 9966 and section 9674, C. O. S. 1921, by proceedings before a board of equalization or review, the taxpayer must at his peril avail himself of such remedy and cannot resort to the courts in the first instance."
On page 60, 133 Okla., Pac. Rep. p. 1106, Mr. Justice Riley, in delivering the opinion of the court, says:
"Section 9674, C. O. S. 1921, provides a remedy for erroneous assessments.
"We must conclude that plaintiff possessed a statutory remedy as against the alleged excessive assessment. He did not avail himself of the remedy provided."
To the same effect is Josey Oil Co. v. Board of County Commissioners of Payne Co., 107 Okla. 268, 231 P. 273, where it is held that an aggrieved taxpayer has two methods given in the statute for the correction of erroneous assessments and relief from illegal assessments. One is by petition to the county commissioners; the other by petition to the county board of equalization.
In the case of Apartments Bldg. Co. v. Smiley, County Treasurer, et al., 32 Fed. Rep. (2nd Series) 142, the Circuit Court of Appeals, Eighth Circuit, says:
"Plaintiff made no return of its property for taxes, and did not apply to the board of equalization for relief against the alleged discriminatory and excessive assessment, and, of course, did not therefore take its appeal to any state court. Section 9675, C. O. S. 1921. It did apply to the board of county commissioners for relief, on the ground of an excessive, and therefore an erroneous, assessment, and prayed for a revaluation, Being refused such revaluation by the board it took no further steps for relief under state statutes, but at once brought the suit at bar."
Thus it will be seen that both this court and the United States Circuit Court of Appeals have held that the commissioners have authority to correct an erroneous assessment.
It will be further noted that this court held section 14 off chapter 152 of the Session Laws of 1910-11, which is, with the exception of the last clause, the same as 9673, C. 0. S. 1921, to be unconstitutional for the reason that chapter 162, Session Laws of 1910-11, is an act creating the office of county assessor, and for other purposes relative thereto, and creates an equalization board, and that the portion providing for the commissioners correcting erroneous assessments was held not to be germane to the title, and is therefore violative of section 57, art. 5, of the Constitution. This decision was rendered June 15, 1915, and what is now section 9674, C. 0. S. 1921, was passed by the Legislature with the, emergency clause attached in February, 1916, and approved February 26, 1916, and became a law immediately.
Section 9671, being section 11, c. 152, of Session Laws 1910-11, creates a board of equalization to be composed of the county commissioners, and provides that the county assessor shall be secretary of said board. The county equalization board shall meet *Page 299 
at the county seat, and shall hold a session commencing on the first Monday in June of each year for the purpose of equalizing taxes over the county, notice of which shall be given 10 days prior thereto in some newspaper of general circulation in the county. Provided, however, should the assessment rolls be not received from the assessor, they shall adjourn from time to time until said rolls shall have been received. Any person who may think himself aggrieved by the assessment of his property shall have the right to appear before the board for the purpose of having the assessment of his property adjusted. Said board shall have the authority to raise, lower, or adjust individual assessments, fixing the same at the fair cash value of the property, and to add omitted property and to cancel assessments of property not taxable. When any assessment has been raised, or other property added thereto, by the board, 5 days' notice thereof in writing should be given to the owner of such property, or his agent, property mailed to such person at his post office address appearing on the assessment sheet, to appear at a time and place fixed in said notice and show cause why such assessment shall not be increased or other property added thereto, and provides an appeal may be taken as provided by law; and section 9675, C. O. S. 1921, provides that appeals may be taken from all boards of equalization to the district or superior court of the county wherein the assessment is made within 30 days after the adjournment thereof.
So, the evident intent and purpose of the Legislature in passing the Act of February 26, 1916 (Laws 1916, c. 19) sec. 9674, C. O. S. 1921, was to take the place of section 14, c. 152, of Act of 1910-11, which had been declared unconstitutional for the reason it was lot germane to the title of said act; otherwise we see no reason why the lawmakers should have provided in the act that "the board of county commissioners of each county is hereby authorized to hear and determine allegations of erroneous assessments, mistakes, or errors made in assessing * * * lands or other property, before the taxes have been paid, on application of any person or persons who shall show by affidavit good cause for not having attended the meeting of the county board of equalization for the purpose of correcting such erroneous assessment, error, mistake, or difference," unless the words "erroneous assessment" were used in the act, not in the sense of illegal, but that the assessment was inequitable merely.
On April 16, 1926, this court in Daniels v. Stucky, County Treasurer, 118 Okla. 150, 257 P. 776, after quoting from section 9966, C. O. S. 1921, providing among other things that any taxpayer, feeling aggrieved at the assessment as made by the assessor or the equalization as made by the county board of equalization, may during the session of that board, or, if the same is closed, within 10 days after the first Monday in June, file with said assessor, as secretary of said board, a written complaint specifying his grievances and the pertinent facts in relation thereto in ordinary and concise language and without repetition in such manner as to enable a person of common understanding to know what is intended, then says:
"In 1916 the Legislature enlarged the time of aggrieved persons for presenting their claims of erroneous assessment by enacting chapter 19, S. L. 1916 (Comp. Stat. 1921, sec. 9674), the pertinent portion reading:
" 'The board of county commissioners of each county is hereby authorized to hear and determine allegations of erroneous assessments, mistakes, or errors made in assessing or preparing the tax rolls, or in the description of land or other property, before the taxes have been paid, on application of any person or persons who shall show by affidavit good cause for not having attended the meeting of the county board of equalization for the purpose of correcting such error, mistake, or difference'."
And further that:
"It is clearly evident from these various statutory provisions that plaintiff had a plain, speedy, and adequate remedy by application to the board of equalization for the correction of the erroneous listing and assessment of his property, if in fact it was erroneous. This right was preserved to him, upon proper showing, up to the last hour before paying his taxes, and if the board should decide against him, he had the right of appeal with a statutory direction to the court to which he appealed to give his claim precedence over all other business."
The Supreme Court of New York, Appellate Division, in People ex rel. Lucey v. Molloy et al., 54 N.Y. Supp. 1084, held that a legislative act entitled:
" 'An act for the refunding of erroneous assessments in the city of Troy', * * * requiring such assessments to be paid by the city at large, is not void as an exercise of judicial power, where the act itself did not declare the assessments 'erroneous,' and the word was not used in the title in the sense of 'illegal,' but that they were inequitable, merely."
Section 1, chapter 43, Session Laws of *Page 300 
1923, amending section 5834, C. O. S. 1921, Provides that:
"From all decisions of the board of commissioners, upon matters properly before them, there shall be allowed an appeal to the district court by any persons aggrieved, including the county by its county attorney, upon filing a bond with sufficient penalty, and one or more sureties to be approved by the county clerk, conditioned that the appellant will prosecute his or her appeal without delay, and pay all cost that he or she may be adjudged to pay in the said district court."
In Thacker v. Witt et al., 64 Okla. 169, 166 P. 713, this court held that:
"Where different legislative enactments have reference to the same subject and are consistent with each other, they should be construed together and harmonized, if possible, so that effect will be given to each so far as is consistent with the evident intent of the latest enactment.
"Subsequent legislative enactments may be considered as an aid in the interpretation of prior legislation upon the same subject."
So, section 14 of chapter 152 of the Session Laws of 1910-11, having been declared to be unconstitutional for the reason that it was not cognate to the title of the act, yet we feel that it will be conceded that if such act had not been declared unconstitutional, it gave the board of county commissioners the authority to equalize erroneous assessments. Then at the next session of the Legislature, in 1916, after section 14 of chapter 152, Session Laws of 1910-11, had been attacked upon the ground that it was unconstitutional, and had been held to be unconstitutional in part, the Legislature passed an emergency law authorizing the board of commissioners to correct erroneous assessments.
It seems clear to us that it was the intention of the Legislature that the Act of February 26, 1916 (Laws 1916, c. 19) should authorize the commissioners to equalize erroneous assessments. This is only giving effect to different legislative enactments having reference to, the same subject, and that are consistent with each other, and should be construed together and harmonized, if possible, so that effect will be given each so far as is consistent with the evident intent of the latest enactment.
Having reached this conclusion, we hold that the words "erroneous assessment," as used in the Act of 1916, were not used in the sense of "illegal," but that the assessment was inequitable, merely."
Section 8, art. 10, of the Constitution provides that:
"All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale; and any officer, or other person authorized to assess values, or subjects, for taxation, who shall commit any willful error in the performance of his duty, shall be deemed guilty of malfeasance, and upon conviction thereof shall forfeit his office, and be otherwise punished as may be provided by law."
Section 1, chapter 129, Session Laws of 1923-24, provides:
"All taxable property shall be listed and assessed each year at its fair cash value, estimated at the price it would bring at a fair voluntary sale, in the name of the owner thereof on the first day of January of each year. * * *"
It is admitted by the agreed statement of facts in this case that real estate in the city of Guthrie was generally assessed at two-thirds of its fair cash value, and throughout Logan county, outside of the city of Guthrie, real estate was assessed at 50 per cent. of its cash value. It is claimed, however, that the property here involved was intended by the assessor to be assessed in the same manner as other real estate in Logan county, Okla., and that there was no systematic intentional valuation of the property of the defendant in error at a higher valuation than other property. If it had been admitted that the property of defendant in error was intentionally assessed at a higher valuation than other real estate of like grade and quality in Logan county was assessed, then of course said assessment would be illegal as a violation of the rights of the defendant in error under the 14th Amendment to the federal Constitution, as held by the Supreme Court of the United States in Sioux City Bridge Company, Plaintiff in Certiorari, v. Dakota County, Nebraska,260 U.S. 441, 67 L.Ed. 340, 28 A. L. R. 979.
In the case of First Nat. Bank of Greely v. Board of County Commissioners of the County of Weld, 68 L.Ed. (U.S.) 785, the Supreme Court of the United States held that:
"The Supreme Court of the United States is bound by a construction by a state court of a state statute with respect to the remedies of a taxpayer for relief from an excessive assessment. A taxpayer cannot excuse his failure to apply to the proper authorities for equalization of his assessment on the ground that the duty of the authorities to equalize taxes was public, and not *Page 301 
a private remedy, where the same board affirmed both assessments which are alleged to have resulted in the inequality, and is vested with the power of equalization, which may be exerted at the instance of anyone aggrieved.
"Failure to seek relief from an alleged unequal tax from the proper board cannot be excused because no appeal to a judicial tribunal is provided in case of rejection of the complaint, and the time is inadequate for hearing individual complaint, since the court will not assume that proper relief would not have been afforded to applicant.
"A taxpayer must exhaust his available statutory remedies before the administrative boards before resorting to courts to enjoin the enforcement of an unequal tax."
The rule of law seems to be settled by our court, and by the Supreme Court of the United States, and by the great might of authority, that it is the duty of a taxpayer, feeling himself aggrieved by an erroneous assessment, to exhaust his available statutory remedies before the administrative boards before resorting to courts for relief. This is the holding of this court in Daniels v. Stucky, County Treasurer, and Cotton v. Blake, County Treasurer, supra, and in each of these cases this court held that the aggrieved taxpayer must exhaust his remedy before a board of equalization or review, and that if he fails to do so, he cannot pay his taxes under protest and sue to recover the same back as provided for in sections 9970, 9971, C. O. S. 1921.
So, we hold that any taxpayer, feeling aggrieved at the assessment as made by the assessor, must appear before the county board of equalization as provided for in section 9966, C. O. S. 1921, unless such taxpayer shall show by affidavit good cause for not having attended the meeting of the county board of equalization, for the purpose of correcting such erroneous assessment, and if he can do so, then such taxpayer must appear before the board of county commissioners for the purpose of having such erroneous assessment corrected, and if the board shall determine from such showing that the taxpayer had good cause for not having attended the meeting of the county board of equalization for the purpose of correcting such erroneous assessment, then the board of county commissioners is authorized to hear and determine allegations of erroneous assessment, and if such board finds from the evidence that such assessment was erroneous, they may equalize the same in the same manner that the county board of equalization is authorized to do by section 9671, C. O. S. 1921. Any party granted the right of appeal from decisions of the board of county commissioners may appeal to the district court of the county.
The next issue for us to determine is, Did the verified application made by the Bank Commissioner and presented to the board of county commissioners of Logan county, Okla., show good cause for not appearing before the county board of equalization?
The agreed statement of facts shows that the Bank Commissioner at all times contended that the property involved in the assessment was state property from the time the same was taken over by the Bank Commissioner, and was therefore not subject to assessment. This being the position taken by the Bank Commissioner, it would have been inconsistent for him to appear before the county equalization board and request that board to equalize an assessment which the Bank Commissioner contended the county assessor had no authority to make.
Further, the agreed statement of facts shows that an action was brought in the district court of Logan county, state of Oklahoma, to determine whether or not the property was subject to assessment, being in the possession and under the control of the Bank Commissioner.
The action commenced in the district court of Logan county to determine whether said property was subject to assessment reached this court in an action styled, "Wenner, County Treasurer, et al. v. Mothersead, Bank Commissioner, et al.," decided February 1, 1927, and rehearing denied and dissenting opinion filed February 28, 1928, and reported in 129 Okla. 273,264 P. 816; wherein this court decided against the contention of the Bank Commissioner and held that said property was subject to taxation. Mr. Justice Hunt wrote a dissenting opinion in this case, which was concurred in by Mr. Justice Phelps. Upon the trial of that cause in the district court of Logan county, the Bank Commissioner obtained a permanent injunction against the collection of said taxes. So, it appears to us that, under the circumstances and history of that case, the board of county commissioners of Logan county was authorized in finding and holding that the Bank Commissioner in this cause showed good cause, by affidavit, for failing to appear before the county equalization board, and this cause having been tried to the court, this court will not reverse the district court, unless it appears that the district court of Logan county was guilty of an abuse of judicial discretion. Abuse of judicial discretion is a discretion exercised to *Page 302 
an end or purpose not justified by, and clearly against reason and evidence. We hold there was no abuse of judicial discretion.
The evidence shows that the property upon which the defendant in error seeks to equalize the taxes was of the fair cash value of from $10,000 to $20,000, and that other real estate in the city of Guthrie was assessed at two-thirds of its fair cash value, and while the courts have held that under the "equal protection" clause of the Federal Constitution the taxpayer seeking to invoke the 14th Amendment of the Federal Constitution must show that the assessing of the taxpayer's property as assessed was systematically and intentionally done by the assessor in order to place a greater burden upon the complaining taxpayer than upon other taxpayers, yet the very purpose and intent of the Legislature in creating an equalization board was for the purpose of equalizing the taxes of the taxpayers in the respective counties, and, as is shown by the stipulation in this case, the county assessor of Logan County assessed real estate in the city of Guthrie at two-thirds of its fair cash value, and real estate in the county at 50 per cent. of its fair cash value to equalize the assessment of real estate in that county with other counties in the state. So, taking into consideration the fair cash value of this property at from $10,000 to $20,000, and assessing it at two-thirds of its cash value, we cannot say that the trial court, who was familiar with all the facts and circumstances, Committed an error in fixing the value of this property at $9,000 a year for assessing purposes for ad valorem taxes, and, as stated before, there is not much contention on the part of the plaintiff in error as to the value of the property, but plaintiff in error bases his contention almost entirely upon the jurisdiction of the board of county commissioners to correct and equalize the erroneous assessment, and upon the fact that if the board of county commissioners did not have authority to equalize the assessment, then the district court, on appeal from the board of county commissioners, did not have jurisdiction to grant the defendant in error the relief prayed, or any other relief.
After the district court of Logan county, Okla., fixed the equalized valuation on this property at $9,000 a year for ad valorem taxes, the defendant in error tendered into open court the amount of taxes as equalized by the court. This tender was declined by the plaintiff in error, and the district court made the temporary injunction permanent against the collection of the taxes, otherwise than fixed by the judgment of the court in this cause. This we think the district court had power and jurisdiction to do.
Finding no prejudicial error in the trial of this cause, the judgment of the district court of Logan county, Okla., is affirmed.
HUNT, CLARK, RILEY, HEFNER, CULLISON, and ANDREWS, JJ., concur. LESTER, V. C. J., concurs in the conclusion. MASON, C. J., absent.
Note. — See under (1) 2 R. C. L. p. 108; R. C. L. Perm. Supp. p. 334. See "Appeal and Error," 4 C. J. § 2753, p. 798, n. 19. "Statutes," 36 Cyc. p. 1149, n. 39. "Taxation." 37 Cyc. p. 1087, n. 45, 46; p. 1110, n. 66.