DEPARTMENT OF HUMAN SERVICES, Appellant,

v.

George GLASBY, Appellee.

No. 77786.

Court of Appeals of Oklahoma, Division No. 2.

July 20, 1993.

Vicki Cox, Karen Smith, Ann E. Williams, Tulsa, for appellant.

Jay L. Fields, Hugh V. Rineer, Rineer, Zacharias & Corbitt, Tulsa, for appellee.

REIF, Vice Chief Judge.

This appeal arises from a paternity proceeding prosecuted by the Department of

Human Services on behalf of a recipient of child support assistance. Following the HLA Blood Test, DHS and Defendant reached an agreement concerning the Defendant's paternity and his liability for past and future support. At a hearing on March 6, 1991, certain aspects of the judgment were resolved by the court, including (1) reimbursement to DHS for past child support, (2) payment of blood test costs by Defendant, (3) the disallowance of interest on these judgments, and (4) a downward deviation from the child support guideline's amount of $355 per month to $247 per month. The disallowance of interest and the deviation were over the objection of DHS.

The journal entry prepared by DHS to memorialize the March 6 rulings was rejected by Defendant and DHS filed a motion to settle the journal entry. Defendant did not file a response or objection to the motion to settle, but he did raise some new issues at the May 22, 1991, hearing to settle the journal entry. More particularly, Defendant requested an adjustment of the guideline percentage of support from 83% to 81.2%, and sought the deferral of income assignment and tax refund intercept remedies until he was one month delinquent. Following the May 22 hearing to settle the journal entry, the trial court entered a signed, written judgment that adopted most of the March 6 rulings as reflected in the DHS proposed journal entry and granted Defendant's requests to adjust his percentage of support and to defer the collection remedies.

DHS brings this appeal contending that the trial court erred (1) in disallowing interest on the money judgments for past support and the blood testing costs, (2) by granting a downward deviation from the amount of support as established by the child support guidelines, (3) by allowing Defendant to raise new issues at the hearing on the motion to settle without having filed a response or a motion to vacate the March 6 rulings, and (4) in restricting the pursuit of income assignments and tax re-

fund intercepts until Defendant was one month behind on current support. The crux of Defendant's response is that the trial court was permitted to exercise discretion and equitable power in making these rulings and that the court's exercise of discretion was fair and equitable under the circumstances of this case. Upon review, we hold that the court properly considered the "new issues" raised by Defendant in settling the final judgment; however, the court did not have discretion to disallow the interest and restrict the collection remedies, and did not have sufficient reason to exercise discretion in allowing the downward deviation.

■ The first issue to be addressed concerns the "new issues" Defendant was allowed to raise at the May 22 hearing. There is no controversy that the court made specific rulings at the March 6 hearing and that most of these were adopted and incorporated into the journal entry that resulted from the hearing to settle the journal entry on May 22. However, until the journal entry was signed and filed, the March 6 rulings were interlocutory and subject to modification on motion of either party, or on the court's own motion, pursuant to 12 O.S.Supp.1990 § 1031.1 in effect during this timeframe. Additionally, the issues which Defendant raised at the May 22 hearing to settle the journal entry were not totally "new issues," because they touched upon the general issues of applying the support guidelines and the use of collection remedies that had been addressed at the March 6 hearing.

We next consider the court's disallowance of interest on the judgments for past support contributed by DHS and for the blood testing costs. Defendant argues that interest on child support awards is governed by a specific statute—43 O.S.1991 § 114—and that the general interest on all judgments statute—12 O.S.1991 § 727—does not apply. Defendant contends that section 114 grants the trial court discretion in the award of interest on judgments en-

tered in child support cases, apparently relying on the opening phrase in the statute "[w]hen ordered by the court." DHS contends that there is no conflict between section 727 and section 114 and that interest is mandatory on *all* judgments under section 727.

Section 114 governs interest on "court-ordered child support payments ... from the date they become delinquent" and does not apply to a judgment for the accrued past support that DHS has provided a child. Under 56 O.S.1991 § 238, past support to a dependent child is a debt due the state and a judgment for such support is a general money judgment. Section 727 plainly states that *"all judgments* of courts of record *shall bear interest."* (Emphasis added.) In construing similar mandatory language in section 727 concerning pre-judgment interest, the supreme court has held that use of the word "shall" was an "imperative command" that "denotes the exclusion of discretion." Any duty that is so mandated cannot be altered under the inherent equitable power of the court. *Fleming v. Baptist General Convention,* 742 P.2d 1087, 1098 (Okla.1987) (citations omitted). The supreme court has also held that a trial court has a "ministerial duty to award interest" under this statute. *Benson v. Blair,* 515 P.2d 1363, 1365 (Okla.1973).

We hold that the post-judgment interest provision must be similarly construed to promote the legislative policy in providing interest on judgments. Accordingly, the trial court had no discretion or equitable power to refuse interest on the judgments for past support and blood testing costs and erred in disallowing interest on these judgments.

Similar considerations dictate that the trial court had no discretion or equitable power to restrict the income assignment and tax refund intercept remedies accorded DHS for collection of the child support in question. DHS points out that

12 O.S.1991 § 1171.3(J)(1) provides that *all* child support orders for recipients of public assisted child support *shall* be subject to *immediate* income assignment. In response, Defendant contends that this general declaration is limited by section 1171.3(J)(2) which allows the court to exercise discretion with respect to income assignments where one party demonstrates and the court finds there is good cause to not require immediate income assignment. The problem with applying section 1171.3(J)(2) to the instant case is that the court did not make a finding that "good cause" existed to defer the otherwise immediate, mandatory income assignment provided in *both* subsections (J)(1) and (J)(2). The court's general statement that the "facts and circumstances of this case" justified a deferral of income assignment is not sufficient. Some *specific* good cause, such as hardship, must be pleaded, demonstrated, and found to exist by the trial court.

With respect to the tax intercept remedies, both DHS and Defendant agree that the applicable law on this issue is 68 O.S.1991 §§ 205.2 and 205.3, as well as 45 C.F.R. §§ 303.60 and 303.72 (1990). Examination of these provisions fails to reveal that any discretion is vested in the trial court to alter these remedies. Discretion is vested in DHS concerning the pursuit of these remedies and the equitable power of the court cannot control or restrict the exercise of such discretion by DHS. The court in *Fleming,* 742 P.2d at 1098, stated that "equity follows the law and where a party's rights are defined by statute, equity is without authority to modify or unsettle those rights," and that "no court is ever justified in invoking the maxim of equity to destroy legal rights." Accordingly, we hold that the trial court had no discretion or equitable power to restrict the income assignment and tax refund intercept remedies accorded DHS by law and it was error for the judgment to defer pursuit of these remedies until Defendant was one month in arrears.

Lastly, we consider the propriety of the trial court's downward deviation from

the amount of child support that was payable under the statutory child support guidelines 43 O.S.1991 § 118. Both DHS and Defendant acknowledge that the statutory guidelines govern the determination of the amount of child support in paternity cases. However, Defendant contends that the guidelines preserved the equitable power of the court to set child support independent of the guidelines. More particularly, Defendant relies upon the language in 43 O.S.1991 § 118 authorizing a deviation from the guidelines "where the amount of support [under the guidelines] is unjust, inequitable, unreasonable or inappropriate under the circumstances." In deviating from the guideline amount, however, the court is to consider "the best interests of the child or children involved" and "the reasonable support obligations of either parent as to other children in the custody of said parent." Additionally, any deviation must be accompanied by "specific findings of fact supporting such action." Clearly, the mandatory, presumptive nature of the guidelines overrides the former equitable power of the court to set child support, *except* where some specific inequity to a party or some specific detriment to the child's best interest is found to result from the application of the guidelines.

■ In the instant case, the only pronouncement by the trial court concerning the downward deviation from the guidelines was that it was "granted over Plaintiff's objection" after considering Defendant's arguments that (1) Defendant was 51 years old, (2) the child in question was 10 years old before Defendant knew of the claim of paternity, (3) Defendant's next youngest child was 26, (4) Defendant's "lifestyle" would cause the guideline support to be "burdensome," (5) the child was covered by Defendant's medical insurance, and (6) Defendant would be paying an amount equal to the assistance previously paid by DHS as well as $100 on the judgment for prior support expended by DHS. Even according due deference and respect to the trial court's sense of fairness, we nonetheless must conclude that none of these factors, either individually or collectively, constitute unjust, inequitable, unreasonable or inappropriate cause to support a downward deviation from the child support guideline amount. The trial court's discretion in this regard was "exercised to an end or purpose not justified by and clearly against, reason and evidence" and was, therefore, erroneous. *State v. State ex rel. Shull,* 142 Okla. 293, 294, 286 P. 891, 892 (1930). The downward deviation is reversed and Defendant is ordered to commence paying the guideline amount from the date of this opinion.

Reversed and remanded with directions to modify the judgment to reflect that (1) the judgments for past support and blood testing costs shall accrue post-judgment interest from May 22, 1991, until paid, (2) the income assignments and income tax intercept remedies are available to DHS without restriction, and (3) the amount of current child support which Defendant is to pay from the date of this opinion is the guideline amount of $355 per month.

BRIGHTMIRE, J., concurs.

RAPP, P.J., concurs in part and dissents in part.

RAPP, Presiding Judge, concurring in part and dissenting in part.

I dissent on the issues of income assignment and tax intercept remedies. What is being fought over at expense to the taxpayer is a thirty-day period to determine delinquency versus an "immediate" period as determined by a bureaucratic function which, with a high probability, will result in frustration and a waste of taxpayer money and judicial assets. The trial court in this case was correct.