Dear Senate Littlefield:
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. The Oklahoma Statutes, 56 O.S. Supp. 1999, §§ 240.22[56-240.22], 240.22A-240.22D and 2000 Okla. Sess. Laws ch. 384, §§ 19, 20 (codified as amended at 56 O.S. Supp. 2000, §§ 240.22E[56-240.22E], 240.22G), authorize the Department of Human Services (DHS) to levy against an obligor's accounts in financial institutions to collect past-due child support when the obligor is in "[n]oncompliance with an order for support" according to 56 O.S. Supp. 1999, § 240.22A[56-240.22A](3). Is an obligor, who owes more than 90 days' child support, in noncompliance under Section 240.22A(3) when he or she is current with a court-ordered payment plan for the past-due support?
 2. Does the answer to the first question change if the judgment order establishing the payment plan reserves DHS's right to levy against an obligor's accounts even if the obligor is current on payments?
 Background
¶ 1 Your questions involve both state and federal lawsconcerning child support enforcement. The federal laws require each state to develop a program to collect child support. States enact statutes and promulgate regulations to comply with the federal requirements. A state's failure to comply with federal requirements may result in termination of federal funds for both child support enforcement and basic welfare benefits. See42 U.S.C. §§ 602(a)(2), 603, 609(a)(5), (a)(8) (Supp. 1999); seealso Kansas v. United States, 24 F. Supp.2d 1192, 1194 (D. Kan. 1998), aff'd, 214 F.3d 1196, 1198 (10th Cir. 2000). In Oklahoma, the Child Support Enforcement Division of the Department of Human Services (DHS) is the agency designated to administer the child support enforcement program for the state.See 2000 Okla. Sess. Laws ch. 384, § 12(1) (codified as amended at 56 O.S. Supp. 2000, § 237.7[56-237.7](1)).
¶ 2 The most recent federal amendments to child support program legislation substantially increased individual states' child support enforcement responsibilities. See The Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. No. 104-193, 110 Stat. 2105 (codified as amended in scattered sections of 42 U.S.C.) (PRWORA). As part of "welfare reform," PRWORA requires each state to "increase the effectiveness" of its child support enforcement program by using various procedures outlined in the Act. See 42 U.S.C. § 666(a) (Supp. 1999). PRWORA's procedures for collecting child support allow states to pursue multiple enforcement remedies against a single obligor (person who owes child support) simultaneously.[1]
 The Child Support Enforcement Process
¶ 3 The DHS becomes involved in child support collection when a custodial parent, who may or may not be receiving welfare benefits, applies for the agency's assistance in collecting past-due support, also called an "arrearage."[2] The DHS obtains a copy of the original order mandating support payments, issued by either a court or an administrative tribunal. See 56 O.S. Supp. 2000, § 237.7[56-237.7](13) (defining "support order" as "an order for the payment of support issued by a district or administrative court of this state or by any court or agency of another state"). Such support orders typically mandate periodic payments to satisfy the child support obligations. An arrearage is created when an obligor fails to adhere to the support order. The arrearage allows the DHS to enter a judgment against the obligor. See 2000 Okla. Sess. Laws ch. 384, § 14(A)(1)(a)(1) (codified as amended at 56 O.S. Supp. 2000, § 240.1[56-240.1](A)(1)(a)(1)).
¶ 4 No court action is required to create a judgment for an arrearage of past-due child support. The Oklahoma Statutes make past-due child support a judgment by operation of law (i.e., a judgment which becomes effective without intervention or order of a court) as follows:
 Any payment or installment of child support ordered pursuant to any order, judgment, or decree of the district court or administrative order of the Department of Human Services is, on and after the date it becomes past due, a judgment by operation of law.
2000 Okla. Sess. Laws ch. 384, § 7(A) (codified as amended at 43 O.S. Supp. 2000, § 137[43-137](A)).
¶ 5 Section 137(A)(1) states further that such judgments have the same force and effect as any other judgment and may be enforced by any method available under state law. See id. As judgments, past due amounts of child support also become liens by operation of law upon an obligor's real and personal property at the time they become past due. See 2000 Okla. Sess. Laws ch. 384, § 6(B) (codified as amended at 43 O.S. Supp. 2000, § 135[43-135](B)). With one very limited exception, judgments for child support do not become dormant[3] and are enforceable until paid in full. See 43 O.S. Supp. 2000, § 137[43-137](B).
¶ 6 The DHS sends the obligor a notice of the existence of the judgment debt for past-due child support and gives the obligor the chance to protest the judgment at an administrative hearing.See 56 O.S. Supp. 1999, § 238.1[56-238.1]. At the conclusion of the hearing, the hearing officer issues an order specifying the total amount of the judgment against the obligor. See 56 O.S. Supp. 1999, § 238.4[56-238.4] (A). If the obligor cannot pay the entire amount at once, the order will establish a payment plan. See 56 O.S. Supp. 2000, § 237.7[56-237.7](20) (defining "payment plan" as including, but not limited to, "a plan approved by the support enforcement entity that provides sufficient security to ensure compliance with a support order or that incorporates voluntary or involuntary income assignment or a similar plan for periodicpayment of past-due support and, if applicable, current and future support") (emphasis added). The obligor may appeal the order to district court. See 56 O.S. Supp. 1999, § 240.3[56-240.3](A).
¶ 7 In addition to the judgment order described above, the Oklahoma Statutes give the DHS authority to issue other orderssua sponte attaching an obligor's assets to collect past-due child support as follows:
 A. The [Child Support Enforcement] Division has the authority to enter orders in the following actions over the signature of the Director [of the DHS] and without the necessity of obtaining an additional signature of a district or administrative court judge:
. . .
 2. In cases in which there is a support arrearage, to secure assets by:
 a. intercepting or seizing periodic or lump-sum payments from:
 (1) a state or local agency, including unemployment compensation, workers' compensation, and other benefits, and
(2) judgments, settlements, and lotteries,
 b. attaching and seizing assets of the obligor held in financial institutions,
c. attaching public and private retirement funds, and
 d. imposing liens in accordance with Section 135 of Title 43 of the Oklahoma Statutes;
 3. To increase the monthly payment of child support, for purposes of securing overdue support, in an amount not to exceed five percent (5%) of the total child support order. This increase may not be made more than once every twelve (12) months[.]
2000 Okla. Sess. Laws ch. 384, § 21 (codified as amended at 56 O.S. Supp. 2000, § 240.23[56-240.23]) (emphasis added).
 1. Is an Obligor Who Owes More Than 90 days' Child Support in Noncompliance Under Title 56, Section 240.22A(3) When He or She is Current With a Court-Ordered Payment Plan for the Past-Due Support?
¶ 8 In the fact situation you present, the obligor owes at least 90 days' past-due child support and a district or administrative court has entered a final judgment for the arrearage. The obligor is making payments on the debt pursuant to a payment plan. Although the obligor is current on his or her payments under the plan, the DHS has levied against the obligor's accounts in financial institutions pursuant to Section 240.23(A)(2)(b) above. You ask whether the DHS has authority to seize money in the obligor's accounts in addition to the payments the obligor is already making, when the obligor is current in his or her obligations under the court-ordered payment plan. The answer is no.
¶ 9 We see that Section 240.23(A)(2)(b) gives the DHS authority to seize assets in financial accounts when an obligor owes past-due child support, which is the situation you describe. This section, however, does not take into account any payment plan ordered by the DHS for paying the arrearage. For that, we must look to the statutes specifically governing the seizure of assets in financial accounts — called "financial institution data match" (FIDM) — 56 O.S. Supp. 1999, §§ 240.22[56-240.22], 240.22A-240.22D and 56 O.S. Supp. 2000, §§ 240.22E[56-240.22E], 240.22G.
 The FIDM Collection Remedy
¶ 10 FIDM is a system operated by the DHS which matches child support obligor information with account information held by financial institutions. See 56 O.S. Supp. 1999, § 240.22[56-240.22](A).[4] FIDM levies are for "the total amount of past-due support." OAC 340:25-5-212(c) (2000). Title 56 O.S. Supp. 2000, § 240.22G[56-240.22G](1) authorizes the DHS to act upon the information it receives as follows:
 Upon matching a delinquent obligor with a financial account,[5] the [Child Support Enforcement] Division shall automatically issue a levy for each match account.
 1. Such levy shall be valid for sixty (60) days. Upon receipt of any levy, the financial institutional shall:
 a. immediately freeze all accounts of the obligor, up to the amount of the lien,
 b. hold funds in the accounts for twenty-one (21) days before remitting payment to the Division, and
c. notify the Division if an account has been closed.
Id. (emphasis added).[6]
¶ 11 Section 240.22G states further that within three workings days after the notice of levy is sent to the financial institution, the Division is to send a copy of the levy to the obligor, with a notice that he or she has ten days to request an administrative review of the levy. See id. § 240.22G(2).
¶ 12 The DHS has promulgated rules for using FIDM to levy against obligors' financial accounts. See OAC 340:25-5-212
(2000). According to the rules, either an obligor or a non-obligated joint account holder may request an administrative review of the levy action on the following grounds:
 (4) The obligor may request an administrative review because:
(A) there is a mistake of identity;
 (B) the obligor did not owe three months of child support at the time of the levy;
 (C) the amount taken by the levy is more than the obligor owes; or
 (D) the levied funds are owned by a non-obligated joint account holder.
 (5) A non-obligated joint account holder may request an administrative review because the levied funds are not owned by the obligor.
OAC 340:25-5-212(d) (2000).
¶ 13 After an administrative review the DHS will issue a notice of its decision. The notice will contain information on how and when the obligor or non-obligated joint account holder may request a hearing on the decision. See OAC 340:25-5-212(e) (2000).
¶ 14 The DHS employs the FIDM collection remedy when an obligor is in "noncompliance" with his or her order for support. See 56 O.S. Supp. 1999, § 240.22[56-240.22](A). The crux of the matter in the situation you raise is whether an obligor can be in noncompliance with an order for support when he or she is current in making payments under the payment plan established in the judgment order. The answer lies in how we interpret the definition of noncompliance. According to the Oklahoma Statutes, an obligor is in "noncompliance with an order for support" when:
 [T]he obligor has failed to make child support payments required by a child support order in an amount equal to the child support payable for at least ninety (90) days or . . . the obligor has failed to make the full payments pursuant to a court-ordered payment plan for at least ninety (90) days.
Id. § 240.22A(3) (emphasis added).
 Determination of Noncompliance
¶ 15 Section 240.22A(3) describes two distinct situations. In the section's first clause, the obligor owes an amount equal to ninety days or more of child support under his or her original support order. There is no mention of a payment plan. In the section's second clause, the obligor has failed to make full payments for a ninety day period under a court-ordered payment plan established to satisfy an arrearage. As noted above, the term "payment plan" applies to all payment plans approved by child support enforcement entities for periodic payment of past-due support. See 56 O.S. Supp. 2000, § 237.7[56-237.7](20).[7]
¶ 16 All such payment plans are "court-ordered" regardless of whether they are established by a district court or an administrative court; the statutes give both types of court equal authority. See, e.g., 2000 Okla. Sess. Laws ch. 384, § 9(D), (E) (codified as amended at 56 O.S. Supp. 2000, § 237[56-237](D), (E)) ("the Division may petition the district court or . . . an administrative court"); 56 O.S. Supp. 2000, § 237.7[56-237.7](13) ("an order for the payment of support issued by a district or administrative court"); 56 O.S. Supp. 2000, § 240.1[56-240.1](D) ("Director has the authority to enter orders . . . without . . . obtaining . . . signature of a district or administrative judge"); 56 O.S. Supp. 2000, § 240.23[56-240.23](A) ("Division has the authority to enter orders . . . without . . . obtaining . . . signature of a district or administrative court judge"). Under either clause of Section 240.22A(3) the obligor must owe a threshold amount of at least ninety days' worth of past-due child support payments for the DHS to use FIDM.
¶ 17 A debt for past-due child support is due in its entirety at the time of judgment, although the DHS allows most obligors to pay their debt in installments. According to the Oklahoma Statutes, 56 O.S. Supp. 2000, § 237.7[56-237.7](5), "past due support" means "the total amount of unpaid support obligations." Id.
Under the fact situation you raise, the obligor has an arrearage which he or she is paying out under a payment plan established in the judgment order. Your question is, under 56 O.S. Supp. 1999, § 240.22A[56-240.22A](3) whether an obligor is in noncompliance with an order for support, even if he or she is current on payments under a payment plan, as long as the obligor continues to owe more than 90 days' past-due child support?
¶ 18 If we interpret Section 240.22A(3) to answer your question affirmatively, that interpretation leads to an absurd result. We are to avoid statutory construction that leads to an absurd result. See AMF Tubescope Co. v. Hatchel, 547 P.2d 374, 379
(Okla. 1976). Our difficulty with such an interpretation is twofold. First, it effectively renders a payment plan established in a judgment order a nullity, because an obligor subject to such a payment plan is, under that interpretation, in exactly the same position as if no plan had been established. In our view, if a district or administrative court determines that the obligor owes past-due support and orders the judgment amount to be paid in installments under a payment plan, the DHS may not resort to FIDM levies unless the obligor fails to make the payments for at least 90 days. The second problem with that interpretation is that it applies the statute's first clause to situations in which the obligor is making payments under a payment plan, while that clause, in contrast to the second clause of the statute, does not mention payment plans at all.
 2. May a Judgment Order Establishing a Payment Plan Reserve DHS's Right to Use FIDM to Levy Against an Obligor's Accounts Even if the Obligor is Current on Payments?
¶ 19 You next ask whether a district or administrative court may, in the judgment order establishing the payment plan, reserve to DHS the right to use FIDM to levy against an obligor's accounts even if the obligor is current on payments. The answer is no.
¶ 20 Title 56, Section 240.22A(3) defines when an obligor is in "[n]oncompliance with an order for support." The DHS may use FIDM to levy against an obligor's financial accounts only when the obligor is, according to the statutory definition, in noncompliance with an order for support. We have seen that an obligor who is current on payments under a court-ordered plan is in compliance with his or her order for support. If a district or administrative court were to issue an order saying DHS had the right to levy against an obligor's accounts even if the obligor is current under a payment plan, the court would effectively be redefining what Section 240.22A(3) says "[n]oncompliance with an order for support" means. Id. This it cannot do. A court has no discretion to alter a statutory definition.
¶ 21 The discretionary and equitable powers of courts in child support enforcement cases were examined in Department of HumanServices v. Glasby, 858 P.2d 1291 (Okla.Ct.App. 1993). InGlasby, the DHS appealed a court's order restricting the agency's right to use income assignment and income tax refund intercept remedies to collect past-due support. The Court of Civil Appeals reversed and remanded to modify the judgment order to reflect that the income assignment and tax intercept remedies be available to the DHS without restriction. Id. at 1295. The court noted that the relevant statutes governing the collection remedies vested discretion in the DHS to pursue them, and that a court had no equitable power to "control or restrict the exercise of such discretion" by the DHS. Id. at 1294.
¶ 22 Like the court in Glasby, we look to the statutes giving the DHS authority to use the FIDM remedy. Those statutes define when an obligor is in noncompliance with an order for support. Applying Glasby, we find that while a court has no discretion to restrict the DHS from using statutorily permitted collection remedies, neither can the court prescribe that those remedies may be used if an obligor is not in the situation that the statute defines. For a court to issue an order saying the DHS could use FIDM to levy against an obligor's accounts regardless of whether the obligor is current with the court-ordered payment plan, would contravene the express language of the FIDM statutes.[8]
 Conclusion
¶ 23 In the situation you raise, a court-ordered payment plan exists; therefore, the second clause of 56 O.S. Supp. 1999, § 240.22A[56-240.22A](3) applies. When an obligor is current with a payment plan, he or she has not "failed to make the full payments pursuant to a court-ordered payment plan for at least ninety (90) days." Rather, the obligor has been ordered to pay an arrearage and is current on his or her payments to satisfy the judgment debt. As long as the obligor is current on payments, the DHS may not use FIDM to levy against the obligor's financial accounts to satisfy the arrearage. Nor can a court order reserve DHS's right to use FIDM despite an obligor's compliance with the payment plan, because such an order would contravene the express language of the FIDM statutes.
¶ 24 Nothing in this Opinion, however, prevents the DHS from pursuing collection remedies other than FIDM, such as tax refund intercept, to satisfy an arrearage even if an obligor adheres to a court-ordered payment plan. Moreover, if subsequent to establishment of a payment plan the DHS discovers an obligor has additional assets that could be used to satisfy an arrearage, the agency may petition the district or administrative court to modify the existing order to apply those assets to the judgment debt pursuant to 56 O.S. Supp. 2000, § 237[56-237](E).
¶ 25 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. An obligor is not in noncompliance with an order for child support under 56 O.S. Supp. 1999, § 240.22A[56-240.22A](3) when he or she is current with a court-ordered payment plan to satisfy a judgment for past-due support. As long as the obligor is current on payments, the DHS may not use financial institution data match (FIDM) to levy against the obligor's financial accounts to satisfy the arrearage pursuant to 56 O.S. Supp. 1999, §§ 240.22[56-240.22], 240.22A-240.22D and 2000 Okla. Sess. Laws ch. 384, §§ 19, 20 (codified as amended at 56 O.S. Supp. 2000, §§ 240.22E[56-240.22E], 240.22G).
 2. A court has no discretion to issue a judgment order reserving the DHS's right to use FIDM to levy against an obligor's financial accounts even if the obligor complies with a court-ordered payment plan. Such an obligor is not in "noncompliance with an order for support" as defined by 56 O.S. Supp. 1999, § 240.22A[56-240.22A](3).
 3. Nothing in this Opinion prevents the DHS from pursuing collection remedies other than FIDM to satisfy an arrearage, even if an obligor complies with a court-ordered payment plan. Moreover, if subsequent to establishment of a payment plan the DHS discovers an obligor has additional assets that could be used to satisfy an arrearage, the agency may petition for a modification of the court order to apply those assets to the judgment debt pursuant to 2000 Okla. Sess. Laws ch. 384, § 9(E) (codified as amended at 56 O.S. Supp. 2000, § 237[56-237](E)).
 W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
 DEBRA SCHWARTZ ASSISTANT ATTORNEY GENERAL
[1] PRWORA remedies include, among others, automatic income withholding, federal and state income tax refund intercept, license revocation, and financial institution data match. See42 U.S.C. § 666 (Supp. 1999). Pursuant to federal mandate, Oklahoma has enacted laws to implement each of these PRWORA remedies.
[2] The terms "arrearage" and "past due support" are synonymous and mean "the total amount of unpaid support obligations." 56 O.S. Supp. 2000, § 237.7[56-237.7](5).
[3] The exception states that a child support judgment shall cease to be a lien upon real property within five years from the date judgment is determined, unless the lien is extended pursuant to 2000 Okla. Sess. Laws ch. 384, § 2(C) (codified as amended at 12 O.S. Supp. 2000, § 759[12-759](C)). See id. § 137(B).
[4] Financial institution data matches are mandated by the federal government pursuant to 42 U.S.C. § 666(a)(17) (Supp. 1999). "[T]he State agency shall enter into agreements with financial institutions doing business in the State — (i) to develop and operate, in coordination with such financial institutions . . . a data match system, . . . in which each such financial institution is required to provide . . . identifying information for each noncustodial parent who maintains an account at such institution and who owes past-due support, and (ii) in response to a notice of lien or levy, encumber or surrender . . . assets held by such institution on behalf of any noncustodial parent who is subject to a child support lien. . . ." Id.
[5] Financial accounts include demand deposit accounts, checking or negotiable withdrawal order accounts, savings accounts, time deposit accounts, money-market fund accounts, or brokerage accounts. See 56 O.S. Supp. 1999, § 240.22A[56-240.22A](1).
[6] This Opinion does not address whether the DHS's FIDM procedures prevent seizure of property exempt by statute from attachment. See 12 O.S. Supp. 1999, § 1171.2[12-1171.2](B); 31 O.S. 1991, §§ 1[31-1], 1.1.
[7] The definition of "payment plan" in Section 237.7(20) expressly applies to the FIDM statutes. See id.
[8] Whether an executive branch entity like the DHS can modify or contravene an order of the judicial branch raises a separation of powers issue that is beyond the scope of this Opinion.