1999 OK 33

Urvashi B. PATEL, Appellee,

v.

OMH MEDICAL CENTER, INC., an Oklahoma Corporation, Saint Francis Hospital, Inc., an Oklahoma corporation, and John B. Stevens, an individual, Appellants.

Urvashi B. Patel, Appellant,

v.

OMH Medical Center, Inc., an Oklahoma Corporation, Saint Francis Hospital, Inc., an Oklahoma corporation, Larry D. Henry, an individual, and Arrington, Kihle, Gaberino & Dunn, Inc., Appellees.

Nos. 90,489, 89,582.

Supreme Court of Oklahoma.

April 27, 1999.

Rehearing Denied Sept. 30, 1999.

Clifford N. Ribner, Tulsa, Oklahoma, for Urvashi B. Patel, Appellee in Cause No. 90,-489 and Appellant in Cause No. 89,582.

Larry D. Henry, Vivian C. Hale, Patrick W. Cipolla, Gable Gotwals Mock Schwabe Kihle Gaberino, Tulsa, Oklahoma, for Appellants, OMH Medical Center, Inc., St. Francis Hospital, Inc., and John B. Stevens, in Cause No. 90,489 and for Appellees, OMH Medical Center, Inc. and St. Francis Hospital, Inc., in Cause No. 89,582.

James M. Sturdivant, Vivian C. Hale, and Patrick Cipolla, Gable Gotwals Mock Schwabe Kihle Gaberino, Tulsa, Oklahoma, for Appellees, Larry D. Henry and Arrington, Kihle, Gaberino & Dunn, in Cause No. 89,582.

OPALA, J.

¶1 The dispositive issues tendered in these appeals are (1) whether the trial judge abused her discretion in ordering the Patel I judgment vacated, and (2) whether the litiga-tion-related misconduct alleged here may be redressed through a civil action in tort. We answer the first question in the affirmative and the second in the negative.

I

## THE ANATOMY OF LITIGATION

¶2 Dr. Urvashi B. Patel ("Patel" or "plaintiff"), an anesthesiologist, entered into a contract in June 1992 with OMH Medical Center, Inc. ("OMH") to practice anesthesiology and serve as director of anesthesia at OMH's medical facility in Okmulgee, Oklahoma. The contract provided that, after Patel relocated to the Okmulgee area, either party could terminate the contract for any reason or for no reason at all by giving the other party one hundred and twenty days advance written notice and by paying to the other party a termination fee of $50,000. Patel moved to the Okmulgee area and worked at OMH for a little more than one year.

¶3 In October 1993, OMH invoked the termination provision of the contract with Patel, but tendered only a portion of the contractual termination fee, claiming an offset for its payment of Patel's malpractice insurance. Conversations took place between Patel and one or more agents of OMH concerning the amount of money owed to her under the contract and the quality of the professional recommendations OMH would provide to Patel as she sought new employment. In Patel I, these conversations were characterized by OMH as contract renegotiations, but portrayed by Patel as attempts to coerce her to abandon her contractual termination fee.

¶4 Whatever their purpose, the conversations came to nought, and Patel sued OMH, Saint Francis Hospital, Inc., and John B. Stevens (collectively, "defendants")[1] for breach-of-contract damages, intentional infliction of emotional distress, and "prima facie tort" in connection with the termination of her contract.[2] The trial resulted in a jury

1. OMH—Okmulgee Medical Center—is the facility at which Dr. Patel worked. St. Francis Hospital, Inc. assisted OMH with administration and provided managerial personnel. John B. Stevens was the administrator at OMH at the time the cause of action in Patel I arose. He answered both to the OMH board of directors and to the management of St. Francis.

2. Patel alleged in her contract claim that OMH had not properly triggered the termination provision of the contract and, therefore, continued to

verdict against defendant OMH alone on Patel's contract claim and for all defendants on the tort claims. Both Patel and OMH appealed. The Court of Civil Appeals, Division III, in an unpublished opinion filed 14 May 1996, affirmed.[3] Patel's petition for certiorari was denied.

¶ 5 Shortly after accepting payment in satisfaction of the judgment and after the mandate in Patel I issued, plaintiff filed the first proceeding under review today ("Patel II"), seeking to vacate, pursuant to the provisions of 12 O.S.1991 § 1031(4), that portion of the Patel I judgment which rejected defendants' liability on her tort claims. Patel alleges that the judgment was obtained through fraud committed on Patel and on the trial court in connection with the judge's decision in the Patel I trial to admit into evidence a certain defense exhibit ("Exhibit 1").

¶ 6 Exhibit 1 was a negative evaluation of Patel's professional performance provided to OMH by Scotland Memorial Hospital ("SMH"), the medical facility at which Patel worked prior to joining the staff of OMH. It was prepared by Mark W. Matson, M.D., Chair, Department of Surgery, a colleague of Patel at SMH[4] At the Patel I trial, OMH

sought to introduce Exhibit 1, not for the truth of its contents, but for the purpose of rebutting an expert witness who testified on Patel's behalf that Patel would have suffered severe harm to her medical career had OMH carried out its alleged threats to deny her good references. In the expert's opinion, a doctor who had a negative reference in her file could not be hired. Exhibit 1 was offered to show that OMH had hired Patel despite the negative reference in her file from Dr. Matson, thereby rebutting Patel's expert witness.[5]

¶ 7 Patel objected to the admission into evidence of Exhibit 1. At a bench conference held to discuss the objection,[6] Patel's attorney stated that an OMH source had told his client that her OMH credentialing file contained a document from, or prepared from statements made by, another doctor who had worked with Patel at SMH. According to Patel, this document explicitly refuted the negative evaluation provided by Dr. Matson, characterizing Dr. Matson's attitude toward Patel as one of personal animosity.[7] Neither Patel nor her attorney had actually seen this document. Patel's attorney further informed the judge that he had only been told a few days before trial that Dr. Matson's negative

owe her a monthly salary of $17,500. Defendants argued that the contract had been properly terminated, that they had paid Patel all but $12,-464.18 of the termination fee, and that their dispute was properly limited to the latter amount. The trial court agreed with defendants and by summary adjudication, limited Patel's contract claim to $12,464.18. Patel's tort claims—intentional infliction of emotional distress and "prima facie tort"—were based upon her allegation that the defendants attempted to coerce her into abandoning the termination fee to which she was contractually entitled by threatening to provide her with poor or neutral recommendations if she persisted in trying to obtain the fee. Patel alleged that even neutral recommendations would be ruinous to her medical career. The expression "prima facie tort" does not appear ever to have been recognized in Oklahoma. For the view that the concept of prima facie tort has been applied in Oklahoma jurisprudence under limited circumstances, see *Merrick v. Northern Natural Gas Co.*, 911 F.2d 426 (10th Cir.1990).

3. *Urvashi B. Patel v. OMH Medical Center, Inc., St. Francis Hospital, Inc., and John B. Stevens,* an individual, Supreme Court Cause No. 85,661, an unpublished opinion of the Court of Civil Appeals, Division III, May 14, 1996.

4. Dr. Matson rated Patel's skills as average or below average, stating that her privileges had at one time been revoked, and recommending that she be monitored before being granted full privileges.

5. Dr. Matson's response was dated July 2, 1992. The contract between OMH and Patel was executed on June 16, 1992, two to three weeks before OMH received Exhibit 1 from Scotland Memorial Hospital. Patel makes the point that it could not therefore have played any part in OMH's original decision whether to hire her. It was received before her application for hospital privileges was considered by a peer review committee and was included in the materials the committee reviewed.

6. The bench conference is transcribed in the trial record at pages 610–617.

7. The refuting document turned out to be a memo drafted by an OMH employee, who prepared it to memorialize her telephone conversation with the doctor from Scotland Memorial Hospital who provided the refuting information.

evaluation would be offered into evidence and that he had responded to that information by insisting that the entire file in which it was kept be produced.

¶ 8   The transcript of the bench conference shows that the court was clearly reluctant to admit Exhibit 1 into evidence. The OMH witness offering it had not been responsible for the file at the time it was created, and defendants had not brought to the trial the original file in its entirety. The court asked defendants' attorney several times in various ways whether there was anything in the file of the nature described by Patel's attorney. The answer was repeatedly that there was not and that Exhibit 1 was a complete document in itself. At one point, the court tried to pin down an answer by stating,

"... The point is not that this document is incomplete but that there may be something in the file that references this document that explains it or further modifies it in some respect.... He is entitled to have that produced ..."

Defendants' attorney responded,

"There is nothing in the file of that nature. There are contradictory references from that city."

¶ 9   The judge then stated that she thought she needed to look at the file, but after being informed that the file was in Okmulgee, she decided to admit Exhibit 1 into evidence and permit Patel to offer testimony in rebuttal. Patel's attorney responded to the court's decision by saying,

"Okay. That is fine."

¶ 10   Exhibit 1 was admitted into evidence. Patel's rebuttal testimony contraposed her unsubstantiated belief about the contents of her credentialing file to defendants' documentary evidence. Patel argues that the admission of Exhibit 1 without the refuting document left the jury with the false impression that a negative reference would not be an impediment to a doctor's future employment. Exhibit 1, she asserts, would have had little or no probative value at all on that issue if the existence of the refuting document had been known.

¶ 11   In her petition to vacate, Patel alleged that defendants' representations to the court regarding the contents of Patel's OMH file were false, that they were relied upon by the court in admitting Exhibit 1, and that the admission of Exhibit 1 tainted the verdict both because its negative contents prejudiced the jury against Patel and because it falsely rebutted a central contention in Patel's case, i.e. that a negative reference would severely harm her medical career.

¶ 12   In response to the petition to vacate, defendants filed a motion to dismiss, which was denied. Patel filed a motion for summary judgment. Oral arguments on the motion for summary judgment were heard on 27 March 1997. At the conclusion of the hearing, the trial court stated that she was not prepared to rule on the motion at that time, but would review the parties' submissions and make a decision at a later date.

¶ 13   On 14 November 1997 the trial court issued a ruling entitled "Order on Plaintiff's Petition to Vacate in Part." Neither in the title nor in the body of the instrument did the court specifically state whether the order was responsive to Patel's motion for summary judgment, but it did state that the court had "reviewed and considered the parties' submissions on Plaintiff's Petition to Vacate Judgment in Part, including their briefs, affidavits, exhibits, oral arguments, and case authority." The court quoted extensively from the record of the bench conference and then concluded,

"Mr. Henry made a specific representation to the Court that there was nothing in the file of the nature about which the Court was clearly concerned. This representation was, in fact, false, there being in the file a typed memorandum by Karen Legg, OMH's risk manager, who kept the credentialing files, regarding a call from Dr. Parkes at Scotland Memorial, a memorandum on this very point and falling squarely within the category sought by the Court. Dr. Parkes called specifically to refute Dr. Matson's negative reference and to explain the circumstances under which Dr. Matson criticized the Plaintiff's professional conduct, a negative evaluation which Dr. Parkes stated was 'strictly of a personal nature' and constituted a 'lack of professionalism on Dr. Matson's part.' ... Mr. Henry [defendants' attorney] made the representation knowing that the Court was

relying on it as a true representation of the state of the file which was known to Mr Henry but not to Mr. Ribner [Patel's attorney] or the Court.

If Mr. Henry had responded that there was something in the file of that nature, the Court would have required it to be produced or would have excluded Defendant's Exhibit 1 on the basis that its admission, absent the additional file material, would mislead the jury on the exact point on which Mr. Henry offered it, that the presence of a negative reference in the file was no impediment to a doctor's future employment.

Mr. Henry's misrepresentation to the Court and opposing counsel constitutes grounds under 12 O.S. Section 1031(4) to vacate the judgment on Plaintiff's tort claims entered on the jury verdict."

¶ 14  The petition to vacate having been granted, defendants filed their petition in error, which is the *first appeal under review today*. This court ordered the appeal retained.

¶ 15  In February 1997 while the petition to vacate was pending, Patel filed a third action ("Patel III")[8] against the corporate defendants in Patel I and Patel II, defendants' lead attorney in those cases, Mr. Larry D. Henry, and his law firm, Arrington, Kihle, Gaberino & Dunn, Inc. In Patel III, Patel seeks compensatory and punitive damages in tort for acts of fraud, deceit, and spoliation of evidence allegedly occurring during the Patel I trial.

¶ 16  Defendants moved to dismiss the Patel III petition on the grounds that it failed to state a claim upon which relief can be granted. The trial court agreed, ruling that no basis exists under current Oklahoma case authority for Patel's claims. Patel's appeal from the dismissal order is the *second case which we review today*. It, too, was retained for this court's disposition.

## II

### STANDARD OF REVIEW

#### A.

A CORRECT CHARACTERIZATION OF THE TRIAL COURT PROCEEDINGS MUST PRECEDE THE COURT'S SELECTION OF THE STANDARD OF REVIEW.

■ ■ ¶ 17  This case presents a procedural imbroglio that makes the assignment of the appropriate standard of review somewhat difficult. Two motions were presented to the trial court. One was defendants' motion to dismiss. The other was Patel's motion for summary judgment. A motion to dismiss may be interposed against a petition to vacate.[9] The purpose of a dismissal motion is to test the law's support for a claim, not the sufficiency of the underlying facts.[10] Where a motion to dismiss tenders facts to be considered by offering materials *dehors* the pleadings, it is incumbent upon the trial court to treat the motion as one for summary judgment.[11] Defendants' motion to dismiss ten-

---

**8.** Patel III was assigned to Judge David L. Peterson, rather than to Judge Jane P. Wiseman, who presided over Patel I and Patel II.

**9.** *Lewis v. Couch*, 194 Okla. 632, 154 P.2d 51, 52 (1944); *Stout v. Derr*, 171 Okla. 132, 42 P.2d 136, 138 (1935). These cases, decided before the adoption of the Oklahoma Pleading Code, 12 O.S.1991 §§ 2001 et seq., approved the interposition of a demurrer to a petition to vacate. A demurrer to a petition under 12 O.S.1981 § 267 contained many of the same grounds for challenging the sufficiency of pleadings as are now provided for by the motion to dismiss in 12 O.S.1991 § 2012(B). By analogy, a motion to dismiss may now be interposed against a petition to vacate to the same extent as a demurrer might have been under the earlier regime.

**10.** *Zaharias v. Gammill*, 1992 OK 149, ¶ 6, 844 P.2d 137, 138.

**11.** *Dyke v. Saint Francis Hospital, Inc.*, 1993 OK 114, ¶ 7, 861 P.2d 295, 298–299; *Norman v. Trison*, 1992 OK 67, ¶ 4, 832 P.2d 6, 8. *See also Silver v. Slusher*, 1988 OK 53, n. 8, 770 P.2d 878, 881, n. 8, *U.S. cert. denied sub nom. Silver v. Farmers & Merchants Ins. Co.*, 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989). The pertinent portion of 12 O.S.1991 § 2012(B) states:

"... If, on a motion asserting the defense numbered 6 of this subsection to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by the rules for summary judgment...."

dered for consideration in this case an excerpted portion of the transcript of testimony in the Patel I trial. This material's inclusion required the trial court to treat defendants' dismissal motion as a motion for summary judgment. *In short, the end result of this procedural exchange confronted the trial court with cross motions for summary judgment.*

¶ 18 Summary process is governed by District Court Rule 13.[12] It sets forth in detail the procedures to be followed where there are no fact issues in dispute and *judgment may be appropriate as a matter of law. By its very terms, Rule 13 applies to prejudgment issues only.*[13] *A vacation proceeding under 12 O.S.1991 § 1031 is a legislatively created remedial mechanism in which a litigant seeks not a judgment, but rather relief from a judgment.*[14] *There are no prejudgment issues in a vacation proceeding.* On the contrary, a vacation quest is a postjudgment remedy. It represents neither a common law or statutory claim nor does it result in a judgment which settles the rights between the parties. Because a vacation proceeding is *a statute-governed procedure to determine postjudgment issues*, summary adjudication process cannot be utilized to decide the matters in contest.[15] This is not to say that an adversary hearing must be afforded in every vacation quest. Although the Rule 13 procedural regime *is textually confined to prejudgment issues*, there is no legal impediment to the use—*in a § 1031 postjudgment vacation proceeding*—of acceptable evidentiary substitutes[16] to eliminate from adversary contest *any individually and clearly defined fact issue* that is claimed as undisputed and shown to be supported *solely by inferences* consistent with the movant's position in the case.[17]

¶ 19 Removing then, as we do, Rule 13 from the procedural arsenal available in a

12. 12 O.S.1991 Ch. 2, App., Rule 13.

13. *Cf. Pickens v. Tulsa Metropolitan Ministry*, 1997 OK 152, ¶ 7, 951 P.2d 1079, 1082.

14. *Parker v. Board of County Commissioners of Okmulgee County*, 187 Okla. 308, 102 P.2d 880 (1940). *See also, Assmann v. Fleming*, 159 F.2d 332, 336 (8th Cir.1947). The statute setting forth the courts' power to vacate or modify their own judgments is found at 12 O.S.1991 § 1031. The first two grounds relate to the courts' power under other statutes to grant a new trial and are governed by the provisions of those other statutes. The third ground for modification or vacation of a judgment or order is that of mistake, neglect or omission of the clerk or irregularity in obtaining a judgment or order. Relief on this ground may be requested in the form of a motion. 12 O.S.1991 § 1032. Proceedings to vacate or modify a judgment or order on the fourth through ninth grounds of § 1031 must be initiated by a petition and verified by affidavit setting out certain specified information. 12 O.S.1991 § 1033. Personal jurisdiction must be obtained by the issuance and service of a summons "as in the commencement of an action." *Id.* Petitions to vacate on the grounds numbered four through nine must be initiated within two years of the date of the judgment or order sought to be vacated or, in the case of fraud, within two years of the discovery of the fraud. 12 O.S.1991 § 1038.

15. The use of summary process in a postjudgment remedial procedure such as that under review today would not even be contemplated were it not for some earlier decisions by this court suggesting that a vacation quest is a civil action. *Lewis v. Couch*, 194 Okla. 632, 154 P.2d 51 (1944); *Turner v. First Nat'l Bank & Trust Co. of Oklahoma City*, 186 Okla. 403, 97 P.2d 894 (1940); *Stout v. Derr*, 171 Okla. 132, 42 P.2d 136 (1935); *Burton v. Swanson*, 142 Okla. 134, 285 P. 839 (1930); *Dardenne v. Daniels*, 101 Okla. 201, 225 P. 152 (1924). These cases are generally concerned with the procedural tools initially available to a defendant in response to the service of a petition to vacate. They relate to the form of the initial pleadings and not to the substantive nature of the proceeding as a whole. Their use of the term "civil action" in reference to a vacation proceeding does not support the sweeping conclusion that a vacation proceeding is a civil action in all respects and for all purposes. To the extent that these cases, all of them antedating the birth of summary process, express that view, they are disapproved.

16. " 'Accceptable probative substitutes' are those which may be used as 'evidentiary materials' in the summary process of adjudication." *Shamblin v. Beasley*, 1998 OK 88, 967 P.2d 1200, 1208, n. 22 (quoting from *Jackson v. Oklahoma Memorial Hosp.*, 1995 OK 112, 909 P.2d 765, 773 n. 35 and *Gray v. Holman*, 1995 OK 118, 909 P.2d 776, 781 n. 16). *See also, Seitsinger v. Dockum Pontiac Inc.*, 1995 OK 29, 894 P.2d 1077, 1080–81; *Davis v. Leitner*, 1989 OK 146, 782 P.2d 924, 926–27.

17. Probative material to be used for support of one's position that a certain "individually and clearly defined issue" is to be taken as undenied could be tendered by a party's motion to eliminate the identified issue (or issues) from consideration in an adversary hearing.

vacation proceeding, we must treat both Patel's *motion for summary judgment* and defendants' motion to dismiss/motion for summary judgment as mere cross motions to enter matter for hearing. The trial court's order granting Patel's petition to vacate must hence be viewed as *responding directly* to Patel's quest for vacation.[18] The appropriate standard of review is to be assigned on that basis.

## B.

## STANDARD FOR REVIEW OF AN ORDER GRANTING OR DENYING A PETITION TO VACATE ON THE GROUNDS OF FRAUD

■ ¶ 20 The standard for review of a nisi prius order granting or denying a petition to vacate is whether the trial court abused its discretion.[19] An abused judicial discretion is manifested when discretion is exercised to an end or purpose not justified by, and clearly against, reason and evidence.[20] It is discretion employed on untenable grounds or for untenable reasons, or a discretionary act which is manifestly unreasonable.[21] We turn next to consider whether the trial court abused her discretion in granting the petition to vacate in this case.

## III

## THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING THE ORDER VACATING THE PATEL I JUDGMENT

¶ 21 Defendants urge four grounds for reversal of the trial court's order vacating the Patel I judgment: (1) the vacation proceeding is barred by settled-law-of-the-case doctrine, (2) Patel's allegations of *intrinsic fraud* are not sufficient to vacate a judgment, (3) Patel has failed to show that defendants' misrepresentations, if any, were made with the scienter necessary for securing the vacation of a judgment, and (4) an evidentiary hearing is required prior to the vacation of a judgment for fraud and none was afforded to defendants. We hold that the nisi prius order vacating the Patel I judgment must be reversed and the cause remanded, though we do so for reasons other than those raised in defendants' first three arguments. We reverse the nisi prius order in this case both because we agree with defendants' fourth ground for reversal—that an evidentiary hearing was indeed the defendants' due—as well as because of the need to explore below the prudential issues newly unveiled in Part III D.

## A.

## A PETITION TO VACATE IS NOT BARRED BY SETTLED–LAW–OF–THE–CASE DOCTRINE

■ ¶ 22 Defendants first argue that Patel's petition to vacate is barred by settled-law-of-the-case doctrine.[22] In their view, all

---

**18.** The record reflects that oral arguments on the motion for summary judgment were heard on 27 March 1997. At the conclusion of the hearing, the trial court stated that she was not prepared to rule on the motion at that time, but would review the parties' submissions and make a decision at a later date. On 14 November 1997, the trial court issued a ruling entitled "Order on Plaintiff's Petition to Vacate in Part." Neither in the title nor in the body of the instrument does the court specifically state that she is ruling on Patel's *motion for summary judgment, but she* does state that she has "reviewed and considered the parties' submissions on Plaintiff's Petition to Vacate Judgment in Part, including their briefs, affidavits, exhibits, oral arguments, and case authority." The Order then grants Patel's petition to vacate. It is unclear whether the court intended her order to be responsive to the motion for summary judgment or whether it was issued directly in response to the petition to vacate.

**19.** *Farm Credit Bank of Wichita v. Trent,* 1997 OK 70, ¶ 21, 943 P.2d 588, 591; *Hassell v. Texaco, Inc.,* 1962 OK 136, ¶ 14, 372 P.2d 233, 235; *Lambert v. Lambert,* 206 Okla. 577, 245 P.2d 436, 439 (1952); *Parker v. Board of County Comm'rs of Okmulgee County,* 187 Okla. 308, 102 P.2d 880, 882 (1940).

**20.** *In re Stackman,* 1963 OK 264, ¶ 29, 388 P.2d 305, 311; *State ex rel. Shull,* 142 Okla. 293, 286 P. 891 (1930).

**21.** *See, e.g. State ex rel. Campbell v. Cook,* 86 Wash.App. 761, 938 P.2d 345 (1997).

**22.** The correctness of the defendants' contention that the vacation quest was barred by the settled-law-of-the-case doctrine is the only argument that must undergo *de novo* review.

issues relating to Exhibit 1 and the contents of Patel's credentialing file were settled in the appeal of the Patel I case, barring Patel from thereafter raising in the context of a vacation proceeding any issue relating to Exhibit 1. Settled-law-of-the-case doctrine operates to bar relitigation of issues in a case that are finally settled by an appellate opinion or those the aggrieved party failed to raise on appeal.[23] Settled-law-of-the-case doctrine is a rule of judicial economy designed to prevent an appellate court from twice having to deal with the same issue. The issue in a vacation proceeding under 12 O.S.1991 § 1031(4) is fraud. There is nothing in the course of antecedent decisional process in this case that has settled the issue of fraud. Accordingly, settled-law-of-the-case doctrine is not a bar to plaintiff's vacation quest.

### B.

### INTRINSIC FRAUD WILL SUPPORT THE VACATION OF A JUDGMENT WHERE RELIEF FROM THE JUDGMENT IS SOUGHT IN THE MANNER AND WITHIN THE TIME SPECIFIED BY STATUTE

¶ 23 Defendants next argue this court's extant jurisprudence requires that relief from a judgment under the provisions of § 1031(4) be predicated upon fraud which is "extrinsic" or which amounts to "fraud on the court." "Intrinsic fraud," they assert, will not support the vacation of a judgment where relief is sought under the provisions of § 1031. Defendants maintain that the trial court erred in granting Patel's vacation quest because her petition to vacate alleges acts of intrinsic fraud only. *We disagree.* Defendants are *incorrect* in their contention that a *§ 1031 vacation quest must rest upon extrinsic fraud.* To the contrary, relief from a judgment in a statutory proceeding brought pursuant to § 1031 *may be predicated upon intrinsic as well as extrinsic fraud.* Only where vacation is sought in an independent action pressed *after* the lapse of the statutory period for bringing a § 1031 proceeding is the petitioner circumscribed by the extrinsic-fraud requirement.

¶ 24 The distinction between intrinsic and extrinsic fraud in proceedings to set aside a judgment for fraud is usually traced back to the case of *United States v. Throckmorton,*[24] a nineteenth-century decision by the United States Supreme Court. In that case, an independent action in equity, the Court refused to set aside a judgment obtained more than twenty years earlier on allegedly perjured testimony and falsified evidence.[25] In *Throckmorton* the Court provided an extensive analysis of the then-extant English and American authorities on the subject of setting aside judgments for fraud and arrived at what has become the classic description of the two types of fraud.[26] When the Federal Rules of Civil Procedure were amended in 1946, the *Throckmorton* limitation was explicitly rejected in federal vacation proceedings initiated within the time limit provided by the rule for seeking relief by motion.[27] Its

**23.** *Morrow Dev. Corp. v. American Bank & Trust Co.*, 1994 OK 26, n. 2, 875 P.2d 411, 413, n. 2; *Mobbs v. City of Lehigh*, 1982 OK 149, n. 5, 655 P.2d 547, 549, n. 5; *Panama Processes v. Cities Service Co.*, 1990 OK 66, n. 27, 796 P.2d 276, 283, n. 27.

**24.** *United States v. Throckmorton*, 98 U.S. 61, 25 L.Ed. 93 (1878).

**25.** *Id.* at 69.

**26.** *Throckmorton*, at 65–66. ("Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,— these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new trial and a fair hearing. (citations omitted) ... On the other hand, the doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed....").

**27.** FRCP Rule 60(b)(3) provides:
"Rule 60. Relief From Judgment or Order
(b) ... On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), ..."

viability in vacation proceedings initiated under the federal rules by an independent action remains an area of controversy in federal civil procedure.[28]

■ ¶ 25 This court has adopted the essence of the *Throckmorton* definitions of extrinsic and intrinsic fraud. We have defined *extrinsic fraud* as "(a) any fraudulent conduct of a successful party, (b) perpetrated *outside* of an actual adversary trial or process and (c) practiced directly and affirmatively on the defeated party, (d) whereby he was prevented from presenting *fully* and *fairly* his side of the case."[29] Examples of extrinsic fraud include false representations that the defeated party is merely a nominal party against whom no relief is sought, false promises of compromise, concealment of suit, kidnapping of witnesses, and similar conduct.[30] We have defined *"intrinsic fraud"* as:

"... any fraudulent conduct of the successful party which was practiced during the course of an actual adversary trial of the issues joined and which had no effect directly and affirmatively to mislead the defeated party to his injury after he announced that he was ready to proceed with the trial. If during the trial the successful party urges forged instruments, or perjured testimony or fails to introduce witnesses of whom he has knowledge and whose testimony would help his adversary and impair his own case, he is guilty of fraud; but it is intrinsic fraud, for relief

from which application must be made to the court having jurisdiction of the issues joined and tried."[31]

■ ¶ 26 While the definitions are fairly simple and straightforward, their application has often been somewhat hazy, leaving the erroneous impression that vacation proceedings brought under § 1031 are restricted to extrinsic fraud. Defendants cite a number of cases in support of their contention that intrinsic fraud will not support relief from a judgment under the provisions of § 1031(4). In *Chapman v. Chapman,*[32] a former wife sought, nearly fifteen years after a divorce had been granted, the vacation of the property settlement provisions of a divorce decree on the ground of fraud. The trial court sustained a demurrer to her petition and this court affirmed, holding that the husband's alleged concealment of spousal assets did not rise above intrinsic fraud. *Defendants mistakenly interpret this case as an application of the extrinsic fraud rule to a § 1031 proceeding. It was not.* While we did in fact apply the extrinsic fraud rule, we did so only because the petitioner had failed to file her petition within the time limit provided for a § 1031 proceeding. *Chapman* was an independent suit in equity, not a § 1031 proceeding, the time for which had expired two years after the divorce decree had been rendered. We noted in *Chapman,* "An independent suit in equity ... will not lie for relief from

---

28. 7 J. Moore, J. Lucas, MOORE'S FEDERAL PRACTICE ¶ 60.24[1] at 60–206; *See, e.g. Averbach v. Rival Manufacturing Co.,* 809 F.2d 1016 (3rd Cir.1987), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3187, 96 L.Ed.2d 675 (1987); *cert. denied, Rival Manufacturing Co. v. Averbach,* 484 U.S. 822, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987) (" '[The distinction] is most unfortunate, if true. [It] rests on cloudy and confused authorities, its soundness as a matter of policy is very doubtful, and it is extremely difficult to apply. It ought not to persist as a limit on independent actions now that it has been abolished on motions.' 11 C. Wright & A. Miller, Federal Practice and Procedure § 2868, at 240–241 (1973) (footnotes omitted)"). Indeed, some have questioned whether *Throckmorton* actually remained authoritative even as it was being cited by state and federal courts for a century. The ambiguity lies in the dictum of Mr. Justice Harlan in the case of *Marshall v. Holmes,* 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870 (1891), decided thirteen years after *Throckmorton.* Like *Throckmorton, Marshall* involved forged documents and perjured testimony

introduced at trial. In *Marshall,* Mr. Justice Harlan stated that equity will provide relief from any judgment obtained through fraud where conscience requires relief and the complaining party is not at fault. *Id.* at 596, 12 S.Ct. 62. This appears to directly contradict the holding in *Throckmorton,* yet *Throckmorton* was cited as the authority for the dictum. The Court has never resolved the apparent conflict.

29. *FDIC v. Jernigan,* 1995 OK 54, ¶ 15, 901 P.2d 793, 798; *Chapman v. Chapman,* 1984 OK 89, ¶ 9, 692 P.2d 1369, 1372–1373; *Sadberry v. Hope,* 1968 OK 107, ¶ 13, 444 P.2d 175, 177.

30. *Sadberry, supra* note 29 at ¶ 13, at 177.

31. *Miller v. Miller,* 1998 OK 24, n. 74, 956 P.2d 887, 905, n. 74, and *Chapman, supra* note 29 at 1373, n. 6, both quoting from *Calkin v. Wolcott,* 182 Okla. 278, 77 P.2d 96, 100 (1937); *FDIC v. Jernigan, supra* note 29 at ¶ 14, at 798.

32. *Chapman, supra* note 29.

*intrinsic fraud but only from extrinsic fraud. Relief from the former must be by direct attack in the same case in which fraud was committed . . .*" (emphasis added).[33]

¶ 27    Defendants also cite *In re Forfeiture of a 1974 Mercury Cougar,*[34] in which the court recited the extrinsic fraud rule in a case brought under the provisions of § 1031, but then decided the case on a different basis. The Ponca City police had seized a 1974 Mercury Cougar owned by petitioners, charging that the car was being used unlawfully to transport marijuana. The car was subject to a purchase money security interest held by Bank. No notice of forfeiture was given to Bank as required by statute and Bank was not represented at the forfeiture hearing. A forfeiture order was issued, following which Bank released its lien. Petitioners sought to vacate the forfeiture order under the provisions of § 1031(4) on the grounds of constructive fraud for failure of the State to provide the requisite statutory notice to Bank. The trial court sustained the State's demurrer. On appeal, this court recited the extrinsic fraud rule, but it is readily apparent that it was not the basis of the court's decision. The opinion states that the existence of the lien was simply irrelevant; it would not have been a defense to the forfeiture action. *The opinion clearly rests on the court's view that no fraud was involved.*[35] Any reference in that case to the extrinsic fraud rule was purely gratuitous.

¶ 28    Other cases cited by defendants are also distinguishable. *Byrd v. Marlin,*[36] an action to set aside a judgment and cancel certain conveyances, was not brought in the same case and same court in which the judgment sought to be vacated was rendered. It was an independent proceeding brought on grounds authorized by § 1031(4), but not technically a § 1031 proceeding. The court discussed the extrinsic fraud rule, but appears to have decided the case on the basis of

unconscionable conduct on the part of a trustee toward the cestui que trust.

¶ 29    In *Pippin v. Jones,*[37] a divorce decree had determined Mr. Pippin to be the father of a child of the marriage. Sometime later, Mr Pippin brought a § 1031 proceeding, claiming fraud in the finding of paternity in the divorce action. This proceeding resulted in an agreed order that he was not the child's father. Still later, the ex-wife brought a paternity action against another man. The trial court in that paternity action found that the agreed order establishing Mr. Pippin's non-paternity was void for failure to comply with § 1031. On appeal, the appellate court, after reciting the extrinsic fraud rule, affirmed the trial court's order, holding that Mr. Pippin had never alleged in his § 1031 proceeding that any fraud had been practiced on him regarding his paternity and had therefore never properly invoked § 1031.[38] Hence, the *Pippin* decision had nothing to do with the distinction between intrinsic and extrinsic fraud.

¶ 30    Two other appellate decisions cited by defendants appear at first blush to support their contention that only extrinsic fraud will support the vacation of a judgment, but each of these contains a qualification that in essence consumes the rule it purports to invoke. In *Copeland v. Anderson,*[39] an ex-wife brought a proceeding to modify a property settlement in a divorce action on the ground of fraud. Holding that the ex-husband's motion to dismiss was correctly granted, the Court of Civil Appeals stated that a § 1031 proceeding

"is restricted to a narrow range of malfeasance extrinsic and collateral to the issues tried. . . . Allegations that a judgment was obtained on evidence known by plaintiff to be false are not sufficient to permit disturbance of the judgment when such party was not prevented from fully and fairly presenting his side of the case."[40]

---

**33.**    *Id.* at 1373, n. 6.

**34.**    1978 OK 102, 581 P.2d 465.

**35.**    *Id.* at ¶ 12, at 467.

**36.**    208 Okla. 655, 258 P.2d 649 (1953).

**37.**    1993 OK CIV APP 113, 856 P.2d 609.

**38.**    *Id.* at ¶ 16, at 611.

**39.**    1985 OK CIV APP 30, 707 P.2d 560, *overruled on other grounds, Cooper v. Parker–Hughey,* 1995 OK 35, 894 P.2d 1096.

**40.**    *Id.* at ¶ 39, at 570.

The appellate court then discussed at some length the fact that the petitioner in *Copeland* had reason to be suspicious of her husband's actions even before the divorce action was filed and that she apparently could have, and should have, "garnered the evidence in advance of trial and presented it in court."[41] The court's focus on the petitioner's suspicions prior to the original trial, when viewed in light of the court's statement quoted above that false evidence will not support disturbance of a judgment *when such party was not prevented from fully and fairly presenting his side of the case*, suggests that the real question for the court was not whether the fraud was extrinsic or intrinsic, but whether the judgment had been secured under circumstances requiring relief.

¶ 31   A similar case is *Sadberry v. Hope.*[42] Again the court appears to be relying on the rigid extrinsic-intrinsic rule, but as in *Copeland* posits the means of escape from the constraint on its discretion that the inflexible application of that rule imposes.   In *Sadberry*, the plaintiff sought a writ of prohibition to restrain the trial judge from conducting a hearing on a guardian's petition to vacate a judgment imposing a surcharge on her.   In holding that the writ of prohibition should be granted, the court recited the general rule that fraud sufficient to support the vacation of a judgment must be extrinsic and collateral to the issues tried and must prevent the complaining party from fairly exhibiting his case in court.[43] The court went on to explain that the matters about which the guardian claimed fraud were all known to her at the time of trial and were presented at the trial or could have been presented had the guardian chosen to present them.   Further, the

court noted that the guardian had failed to show how the plaintiffs or their counsel had prevented her from presenting fully and fairly her side of the case.   Both *Copeland* and *Sadberry,* which appear to reject intrinsic fraud as a ground for vacating a judgment, *actually turn less on that distinction and more on the question of whether the complaining party had a fair adversary proceeding, regardless of the category into which the allegations of fraud happened to fall.*

¶ 32   The provisions of § 1031(4) make no distinction between intrinsic and extrinsic fraud.   To the extent that *Copeland, Sadberry,* or any other decisions of this court have applied the intrinsic/extrinsic dichotomy to vacation proceedings under § 1031(4) brought in the same court in which the judgment sought to be vacated was rendered, their expressions are disapproved and withdrawn.   *More recent decisions have made clear* that the intrinsic/extrinsic polarity is not applicable to vacation proceedings brought pursuant to § 1031.[44] *Patel's petition is not insufficient* because the acts alleged to be fraudulent may be categorized as intrinsic fraud.[45]

C.

## PROOF OF ACTUAL FRAUD IS NOT NECESSARY TO OBTAIN § 1031 RELIEF FROM A JUDGMENT

¶ 33   Defendants next contend that in order for a vacation quest to succeed, all of the elements of actual fraud must be established, including an intent to deceive.   They argue that Patel has failed to prove that defendants' misrepresentations, if any, were made with the requisite scienter.   Moreover, the

---

**41.**   *Id.* at ¶ 42, at 570.

**42.**   1968 OK 107, 444 P.2d 175.

**43.**   *Id.* at ¶ 12, at 177.

**44.**   *FDIC v. Jernigan,* 1995 OK 54, 901 P.2d 793 (holding that because the allegation of fraud was of an intrinsic nature, the vacation quest was time-barred in that it had been brought after the lapse of two years from the date of the order sought to be vacated); *Chapman v. Chapman,* 1984 OK 89, 692 P.2d 1369 (holding that a vacation claim instituted more than two years after judgment—by an independent suit in equity rather than in the original case—must be predi-

cated upon extrinsic fraud practiced in obtaining the judgment).

**45.**   Patel argues that defendants' fraud also constitutes "fraud on the court."   We need not decide whether the fraud alleged is or is not fraud on the court because we have held that her petition is sufficient based upon intrinsic fraud.   It is likewise unnecessary to determine whether an attorney's misrepresentations to the court in a bench conference, which are not in themselves testimony in the case in chief, are intrinsic or extrinsic to the proceeding.   We merely hold that *if* the allegations in Patel's petition state intrinsic fraud, they are sufficient to support the relief requested.

order granting Patel's petition to vacate failed to make any finding that defendants intended to deceive either the trial court or Patel. We reject the contention that proof of actual fraud is required in order to obtain relief from a judgment under § 1031.

¶ 34   Fraud, a generic term with multiple meanings[46] is divided into actual fraud and constructive fraud.[47] Actual fraud is the intentional misrepresentation or concealment of a material fact which substantially affects another person.[48] Constructive fraud, a breach of either a legal or equitable duty, does not necessarily involve any moral guilt, intent to deceive, or actual dishonesty of purpose.[49] It may be defined as any breach of a duty which, regardless of the actor's intent, gains an advantage for the actor by misleading another to his prejudice.[50] Constructive fraud, which has the very same legal consequence as actual fraud, may be invoked to prevent harm or to extend protection to recognized public interests.[51]

¶ 35   In some older decisions of this court, it was held that only actual fraud would support the vacation of a judgment.[52] *In light of our view, just stated, that constructive fraud has the very same legal consequences as actual fraud, such a restriction can no longer be considered a correct exposition of our statutory law.* Hence, constructive fraud will support the vacation of a judgment in a § 1031 proceeding, and the trial court's order here under review is not infirm by its failure to make a finding of fact as to the element of intent required for proof of actual fraud.

### D.

## IT IS AN ABUSE OF DISCRETION TO GRANT A VACATION QUEST ON THE GROUNDS OF FRAUD WITHOUT FIRST EVALUATING THE PETITION IN LIGHT OF EQUITABLE LIMITATIONS ON OBTAINING THE RELIEF REQUESTED

¶ 36   Patel seeks relief from a judgment on the basis of acts of fraud allegedly occurring during the course of a trial at which she was present and participated. Her petition to vacate and other pleadings in the vacation quest show that at the time of the Patel I trial, Patel had what she believed to be reliable information that defendants' representations to the court about her credentialing file were false and misleading. Patel objected to the admission of Exhibit 1 and informed the court of her belief that the file contained another document which would contradict the document being offered into evidence by defendants. Although Patel never withdrew the objection, she did not ask for a delay or continuance in the trial to review the file for the document she believed it contained, nor did she stand on her objection when the court arrived at its compromise permitting Patel to testify about Exhibit 1. In fact, the record reflects that the court would have been justified in interpreting her response as acquiescence in the granted compromise.

¶ 37   A vacation quest must be evaluated in light of the principle of the finality of judgments.[53] That principle, conceptually

**46.** *Faulkenberry v. Kansas City Southern Railway Co.,* 1979 OK 142 ¶ 4, 602 P.2d 203, 206, *U.S. cert. denied,* 464 U.S. 850, 104 S.Ct. 159, 78 L.Ed.2d 146 (1983); *Singleton v. LePak,* 1967 OK 37, ¶ 13, 425 P.2d 974, 978.

**47.** *Faulkenberry, supra* note 46 at n. 6, at 206, n. 6; *Steele v. Steele,* 295 F.Supp. 1266, 1269 (D.C.W.Va.1969).

**48.** *Faulkenberry, supra* note 46 at ¶ 4, at 206.

**49.** *Id.* at ¶ 4, at 206. Constructive fraud does not require an intent to deceive, and liability for constructive fraud may be based on negligent or even innocent misrepresentation. *U.S. Fibres, Inc. v. Proctor & Schwartz, Inc.,* 358 F.Supp. 449, *aff'd,* 509 F.2d 1043, 1047 (6th Cir.1975). *Phillips v. Ball,* 1960 OK 145, ¶ 13, 358 P.2d 193,

197 (where one has a duty to speak, but remains silent, he may be guilty of constructive fraud).

**50.** *See France v. Chaprell Jeep–Eagle Dodge, Inc.,* 1998 OK CIV APP 159, 968 P.2d 844.

**51.** *Faulkenberry, supra* note 46 at ¶ 4, at 206.

**52.** *Fed. Tax Co. v. Board of Comm'rs of Okmulgee County,* 187 Okla. 223, 102 P.2d 148 (1940); *Abernathy v. Huston,* 166 Okla. 184, 26 P.2d 939 (1933) (ordinarily the fraud essential to vacate a judgment on direct attack must be actual fraud, but the use of constructive fraud is permitted); *Brown v. Trent,* 36 Okla. 239, 128 P. 895 (1912).

**53.** *Robinson v. Audi Aktiengesellschaft,* 56 F.3d 1259, 1265 (10th Cir.1995), *cert. denied,* 516 U.S. 1045, 116 S.Ct. 705, 133 L.Ed.2d 661 (1996).

encompassed in the various preclusion doctrines, collides in a vacation proceeding with the principle that a fair adversary proceeding must be vouchsafed to the parties in a lawsuit. An unlimited ability to attack a judgment valid on its face would burden the judicial system with the potential for endless and repetitious litigation and jeopardize the public's and the parties' reliance on seemingly final adjudications. On the other hand, where a party has not had a reasonable opportunity to litigate a claim or defense before a court having jurisdiction, unwavering adherence to the doctrine of finality of judgments would result in unfairness and in the lowering of the judicial system in the esteem of the affected litigants as well as of the public. Neither a blanket prohibition against relief from judgments nor the mandated consideration of each and every petition to vacate is desirable or necessary. Both principles must be upheld and are best protected by placing reasonable and prudent procedural requirements on a litigant who launches a § 1031 attack.

■■■ ¶ 38 We accordingly hold that in a proceeding under § 1031 to vacate an earlier judgment on the grounds of fraud, *the petitioner must*: (1) show that he (or she) acted without delay in asserting his (or her) rights after discovering the fraud, (2) establish that he (or she) used diligence in the original action in trying to discover and expose the fraud, (3) provide clear and convincing evidence of the fraud, and (4) demonstrate that there is a substantial likelihood that a new trial will have a different result. The prudential requirements we impose today on one who initiates a § 1031 attack will ensure that the complaining party has not in some way helped to create, or invited, the need for a new trial and that granting a new trial will not be a useless exercise. The

absence from the record of any judicial inquiry into these prudential factors requires that the postjudgment order of vacation be reversed and the cause remanded for further proceedings.

■■■ ¶ 39 One of the dissenters would reverse the trial court's order and direct that vacation relief be denied. It is unclear whether that dissenter considers the petition (for vacation) facially insufficient or whether he deems the defendant entitled to victory by summary relief. If it be the latter, today's withdrawal of the Rule 13 regime from the procedural arsenal the parties may invoke in a vacation proceeding *makes summary disposition unavailable* in this case.[54] If, on the other hand, the dissenter's view is that the petition's facial insufficiency requires its dismissal, he is in error. The allegations of the petition are sufficient to state a prima facie case of fraud. Until this pronouncement, no more was necessary to avoid a vacation petition's dismissal.[55] Today's opinion unveils additional fact issues to be addressed before vacation relief may be granted. Plaintiff *must be afforded an opportunity to present evidence* that would show the existence of those newly required facts. Today's remand, which assures the plaintiff of that opportunity, is indeed a constitutional imperative.[56]

E.

ALL PARTIES MUST BE AFFORDED AN OPPORTUNITY TO PRESENT EVIDENCE ON DISPUTED FACT ISSUES BEFORE A JUDGMENT MAY BE VACATED IN A PROCEEDING BROUGHT PURSUANT TO THE PROVISIONS OF § 1031.

■■■ ¶ 40 Defendants complain that error was committed in the nisi prius order vacating the Patel I judgment because they

---

**54.** The dissent does not appear to take issue with the court's treatment of Rule 13's outer limit.

**55.** A petition that states a prima facie case is not subject to dismissal, unless it appears beyond doubt that the plaintiff can prove no facts to support the claim. *Frazier v. Bryan Memorial Hosp. Authority,* 1989 OK 73, 775 P.2d 281; *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

**56.** Minimum standards of due process require that persons be given notice and an opportunity

to be heard before any of their substantial rights may be altered or affected. *Matter of Estate of Pope,* 1990 OK 125, ¶ 3, 808 P.2d 640, 642–643; *Snyder v. Smith Welding & Fabrication,* 1986 OK 35, ¶ 5, 746 P.2d 168, 170; *Armstrong v. Netherlands Pipeline Const. Co.,* 1968 OK 170, ¶ 12, 447 P.2d 762, 764; *Smith v. State Industrial Court,* 1965 OK 179, ¶ 11, 408 P.2d 317, 320–321; *McMinn v. State,* 1961 OK 280, ¶ 10, 366 P.2d 954, 957.

were not afforded an evidentiary hearing. Instead, *only* oral arguments were presented on the single misconceived motion for summary judgment. Defendants assert that the provisions of 12 O.S.1991 § 1034 require an evidentiary hearing before a judgment may be vacated pursuant to § 1031(4).[57] Although we agree that an opportunity to offer evidence on disputed fact issues must be afforded the parties in a vacation proceeding, we disagree that it is § 1034 that imposes this requirement. *Section 1034 authorizes, but does not require, an evidentiary hearing.* It merely speaks to the issues that the party seeking vacation must meet and sets up the order in which the court may consider the parties' contentions. *The court must determine that there is a statutory ground for vacating the judgment and that the petitioner has an available defense or cognizable cause of action.*

■ ¶ 41 Nevertheless and apart from § 1034, where the dispositive issues in a vacation quest call upon the trial court to resolve one or more fact controversies, an opportunity to adduce proof must be provided. The Constitution inexorably commands that no one's rights are to be adversely affected by judicial process that takes place in the absence of notice and a full and fair opportunity to be heard.[58] In the vacation proceeding under review today, the court is called upon to determine fact issues relating to fraud as well as fact issues relating to the prudential restrictions on vacating judgments which are set forth in today's opinion. On these disputed fact issues the parties must be afforded an opportunity to present evidence.

■ ¶ 42 An appellate court cannot make first-instance decisions.[59] In the battle of motions waged by the parties in this case, unresolved fact issues went undetected. The trial court's failure to receive evidence on these disputed issues makes her decision (to vacate the Patel I judgment) premature and constitutes an abuse of discretion. We therefore remand Cause No. 90,489 to the court of first instance to undertake an inquiry into, and make its determination on, the disputed critical fact issues.[60]

## IV

### NO CIVIL REMEDY IS AVAILABLE FOR LITIGATION–RELATED MISCONDUCT [61]

■ ¶ 43 In the second case under review today, we are asked to reverse the

57. The provisions of 12 O.S.1991 § 1034 are: "The Court may first try and decide upon the grounds to vacate or modify a judgment or order before trying or deciding upon the validity of the defense or cause of action."

58. See, *PFL Life Ins. Co. v. Franklin,* 1998 OK 32, ¶ 9, 958 P.2d 156, 162.

59. When necessary finding of facts and conclusions of law are absent, the case must be remanded with directions that they be made by the trial court. *Toxic Waste Impact Group, Inc. v. Leavitt,* 1994 OK 148, 890 P.2d 906, 913; *Dyke v. Saint Francis Hospital, Inc.,* 1993 OK 114, 861 P.2d 295, 300, n. 13; *Teel v. Teel,* 1988 OK 151, 766 P.2d 994, 999, n. 19; *Sandpiper North Apartments Ltd. v. American Nat. Bank,* 1984 OK 13, 680 P.2d 983, 993; *Matter of Estate of Bartlett,* 1984 OK 9, 680 P.2d 369, 377; *Davis v. Gwaltney,* 1955 OK 362, 291 P.2d 820, 824.

60. In sum, the court's affirmance of her nisi prius victory (in Cause No. 90,489) is *not Patel's due on this record.* Submission of her quest for relief upon deficient proof *mandates today's reversal.* Upon Patel must fall the loss from the found probative infirmity. Hers was the duty to supply the evidentiary basis for the vacation order. *Gavin v. Heath,* 125 Okl. 118, 256 P. 745, 746 (1927). One on whom the law casts the burden of producing proof for the relief sought bears the risk of failed (or substandard) production. *Director, OWCP v. Greenwich Collieries,* 512 U.S. 267, 272, 114 S.Ct. 2251, 2255–2256 129 L.Ed.2d 221 (1994). Patel's defeat by today's pronouncement *need not be irreversibly final.* Remand for further nisi prius proceedings *will* afford her the opportunity to supply the deficiency. The proof she needs, now absent from the record, does not appear to be clearly beyond her ability to secure upon remand. *Sherrill v. Sovereign Camp, W.O.W.,* 184 Okl. 204, 86 P.2d 295, 296 (1939); *Guinn v. Church of Christ of Collinsville,* 1989 OK 8, 775 P.2d 766, 775.

61. The court's holding today is not governed by the civil remedy contemplated by the provisions of the criminal statute found at 21 O.S.1991 § 575. Its provisions state: "Every attorney who, whether as attorney or as counselor, who: 1st, is guilty of any deceit or collusion, or consents to any deceit or collusion with intent to deceive the court or any party; ... is guilty of a misdemeanor; and, in addition to the punishment prescribed therefor by this code, he forfeits to the party injured treble damages, to be recovered in a civil action." By its terms, § 575 *is not applicable to this case.* The civil remedy authorized there *requires an*

dismissal of Patel's tort action for failure to state a claim. In that action damages were sought for defendants' alleged fraud, deceit, perjury, and spoliation of evidence in the Patel I trial. In reviewing a *nisi prius* disposition by dismissal, the issues stand before this court for *de novo* review. The purpose of a motion to dismiss is to test the legal sufficiency of the pleadings, not to evaluate the underlying facts.[62] The question before us is hence whether, taking all of plaintiff's allegations as true, she is precluded from recovering as a matter of law. We hold that she is barred.

■■■ ¶ 44 In *Cooper v. Parker–Hughey*,[63] this court held that in this state no civil action may be maintained for damages caused by perjury, whether the petition for damages refers to the tort as perjury or as fraud or deceit. The court's holding in *Cooper* reasoned that perjurious testimony constitutes a fraud or deceit on the finders of fact and on the judicial system as a whole, and not on an individual litigant. The court looked to the common law, the Oklahoma Constitution, and to Oklahoma statutory provisions. It found there no support for the adoption of a tort remedy to provide damages for perjury. To the extent Patel's petition relies on perjurious testimony as the basis of her claim for damages, whether de-

nominated perjury, fraud, deceit, or "prima facie tort", the petition fails to state a claim. It was properly dismissed.

¶ 45 Patel also claims damages for spoliation of evidence, denominating her claim either spoliation of evidence or prima facie tort. Neither spoliation of evidence nor prima facie tort (for acts constituting spoliation *of evidence*) has ever been recognized by this court as actionable. Because the conduct complained of in this action does not present a case of spoliation of evidence, we need not consider today whether that tort should be recognized as a viable cause of action in this state.

■■■ ¶ 46 Spoliation is defined as "[t]he destruction of evidence.... The destruction, or the significant and meaningful alteration of a document or instrument."[64] Spoliation occurs when evidence relevant to prospective civil litigation is destroyed, adversely affecting the ability of a litigant to prove his or her claim. Although a few jurisdictions have adopted the tort of spoliation,[65] most of the courts which have considered the issue have refused to recognize spoliation as an independent cause of action in tort.[66]

■■■ ¶ 47 No destruction or alteration of a document or instrument took place in this

---

*antecedent criminal conviction*. No criminal proceeding has been instituted against these defendants. We express no opinion in regard to the viability of a civil action if one is brought pursuant to the terms of this statute.

**62.** *Zaharias v. Gammill*, 1992 OK 149, ¶ 6, 844 P.2d 137, 138. According to Professor Fraser, a petition is sufficient under the Oklahoma Pleading Code if it discloses "the existence of the necessary elements of a legally recognized claim or cause of action." George B. Fraser, The Petition Under the New Pleading Code, 38 Okla. L.Rev. 245, 246 (1985). A petition can generally be dismissed only for lack of any cognizable legal theory or for insufficient facts under a cognizable legal theory. *Lockhart v. Loosen*, 1997 OK 103, ¶ 4, 943 P.2d 1074, 1077; *Washington v. State ex rel. Department of Corrections*, 1996 OK 139, ¶ 7, 915 P.2d 359, 361; *Indiana National Bank v. State Department of Human Services*, 1994 OK 98, ¶ 2, 880 P.2d 371, 375. A motion to dismiss for failure to state a claim upon which relief can be granted will not be sustained unless it should appear without doubt that the plaintiff can prove no set of facts in support of the claim for relief. *A–Plus Janitorial & Carpet Cleaning v. The Employers' Workers' Compensation Association*, 1997

OK 37, ¶ 9, 936 P.2d 916, 922; *National Diversified Business Services, Inc. v. Corporate Financial Opportunities, Inc.*, 1997 OK 36, ¶ 9, 946 P.2d 662, 665; *Delbrel v. Doenges Bros. Ford*, 1996 OK 36, ¶ 3, 913 P.2d 1318, 1320. The court must take as true all of the challenged pleading's allegations together with all reasonable inferences which my be drawn from them. *Great Plains Federal Savings and Loan Association v. Dabney*, 1993 OK 4, ¶ 2, n. 3, 846 P.2d 1088, 1090, n. 3.

**63.** 1995 OK 35, 894 P.2d 1096.

**64.** BLACK'S LAW DICTIONARY 1257 (5th ed.1979).

**65.** *Bondu v. Gurvich*, 473 So.2d 1307 (Fla.Dist. Ct.App.1984), *rev. denied*, 484 So.2d 7 (Fla.1986); *Hazen v. Municipality of Anchorage*, 718 P.2d 456 (Alaska 1986); *Viviano v. CBS, Inc.*, 251 N.J.Super. 113, 597 A.2d 543 (1991), *cert. denied*, 127 N.J. 565, 606 A.2d 375 (1992); *Smith v. Howard Johnson Co.*, 67 Ohio St.3d 28, 615 N.E.2d 1037 (1993).

**66.** *Trevino v. Ortega*, 969 S.W.2d 950 (Tex.1998) and cases cited therein at 952.

case. The allegedly wrongful conduct here consists of defendants' failure to respond fully in the course of discovery and of the oral misrepresentation at trial by defendants' attorney as to the existence of a document in Patel's credentialing file. Adequate remedies for this conduct exist. One such remedy, a vacation quest, Patel is currently pursuing. If she is successful in vacating the Patel I judgment, discovery or other sanctions for the defendants' litigation-related misconduct in the original case may, if warranted, be imposed in the reopened case. Apart from remedies available within the existing case, a party aggrieved by litigation-related misconduct may seek to invoke sanctions available under the criminal law and, in the case of attorney misconduct, by bar disciplinary measures.[67] The trial court correctly dismissed this claim.

## V

### SUMMARY

¶ 48 The provisions of 12 O.S.1991 § 1031 et seq. provide a legislatively created mechanism for relief from judgments. The fourth ground for relief under § 1031—fraud practiced by the successful party in obtaining the judgment—is available *whether the alleged fraud is regarded as extrinsic or intrinsic.* Patel's allegations fall within the meaning of § 1031(4). It remains for her to convince the nisi prius court that she was unable at any point in course of the Patel I trial proceedings to neutralize the adverse effects of the fraud, and that the fraud so contributed to reaching the verdict against her that in its absence she would probably have prevailed on her cause of action. Finally, while we acknowledge the seriousness of litigation-related misconduct such as that alleged in Patel III, we explicitly decline today to provide redress for that civil harm *through the adoption of a new tort.* The available remedies, including the relief Patel seeks in the Patel II proceeding, are sufficient.

¶ 49 **THE TRIAL COURT'S POST-JUDGMENT ORDER IN CAUSE NO. 90,-489 VACATING THE PATEL I JUDGMENT IS REVERSED AND THE CAUSE REMANDED FOR FURTHER PROCEEDINGS TO BE CONSISTENT WITH TODAY'S PRONOUNCEMENT; THE TRIAL COURT'S ORDER OF DISMISSAL IN CAUSE NO. 89, 582 IS AFFIRMED.**

¶ 50 HODGES, LAVENDER, ALMA WILSON, KAUGER, and WATT, JJ., concur;

¶ 51 HARGRAVE, V.C.J., concurs in result;

¶ 52 SUMMERS, C.J., and SIMMS, J., concur in part and dissent in part.

SUMMERS, C.J., concurring in part and dissenting in part.

¶ 1 I concur in the Court's opinion disposing of appeal no. 89,582.

¶ 2 As to appeal no. 90,489, I concur with most of what the Court has said regarding the law applicable to that matter. I dissent, however, from remand. Defendants were given the opportunity to offer further submissions, and stood silent. I believe at that point in time the trial court and all parties justifiably concluded that the matter stood fully submitted. I would affirm the trial court.

SIMMS, J., concurring in part and dissenting in part:

¶ 1 I agree with the majority that no civil remedy for the alleged litigation misconduct is available and I concur in affirming the trial courts dismissal of Patel III, case number 89,582. Additionally, I agree with the majority that the trial court abused its discretion in vacating the judgment in Patel I, case number 90,489. That judgment was final and plaintiffs allegations in support of her vacation petition, even if proven, were insufficient to sustain her action and the trial courts decision in her favor. I would not remand the matter for an additional hearing, however. Instead I would reverse the trial courts judgment in favor of Patel and direct the trial court to enter judgment in favor of the defendants. Plaintiff bore the burden to prove her case. See e.g. *Gavin v. Heath,* 125 Okl. 118, 256 P. 745 (1927). She had the opportunity to establish her case but, by any and all measures, she failed to do so, and the

---

67. *See, e.g.* 21 O.S.1991 § 575.

trial courts ruling in her favor was clearly an abuse of discretion. The defendants motion to dismiss should have been sustained. The majority's stated concern with the denial of a sufficient opportunity for defendants to put on their case in defense of the petition to vacate is, therefore, strained and unconvincing and lends no credence to this disposition. The majority errs in granting Patel this additional chance to try and make her case against defendants, and I fear this "new" view of fraud created here to govern the trial on remand will create much confusion in this previously settled area of law.